731 A.2d 600

**In the Matter of Jerome J. VERLIN.**

Supreme Court of Pennsylvania.

Argued Feb. 2, 1999.

Decided June 23, 1999.

Harold E. Ciampoli, Audubon, for Petitioner, Disciplinary Bd.

James C. Schwartzman, Philadelphia, for Respondent, Jerome J. Verlin.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, NIGRO and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

This case involves Petitioner Verlin's petition to be reinstated to the bar following his disbarment. On July 5, 1991, Verlin was convicted of criminal conspiracy, perjury, false swearing, and theft by deception. The criminal charges leveled against Verlin stemmed from his improper handling of two related personal injury actions. Following Verlin's conviction, on November 30, 1995, this Court entered an order disbarring Verlin retroactive to September 4, 1992. Verlin now petitions this Court for reinstatement pursuant to Rule 218(c)(6) of the Pennsylvania Rules of Disciplinary Enforcement (Pa.R.D.E.). For the reasons that follow, we grant the petition for reinstatement.

Verlin filed his instant petition for reinstatement on December 18, 1996. A hearing on the petition was held before a hearing committee on October 20, 1997. Following the hearing, the committee filed a report recommending that the petition for reinstatement be granted. The Office of Disciplinary Counsel filed a brief on exceptions, and the matter was adjudicated by the Disciplinary Board at a meeting on June 10, 1998. The Disciplinary Board thereafter issued a report recommending that Verlin's petition for reinstatement be granted.

On October 15, 1998, the Court issued a rule to show cause why an order denying Verlin's petition for reinstatement should not be entered based on his failure to meet the threshold standard articulated in *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986), as well as his failure to demonstrate by clear and convincing evidence, as is

required by Pa.R.D.E. 218(c)(3)(i), that his present resumption of the practice of law would not have a detrimental effect upon either the integrity and standing of the bar, the administration of justice, or the public interest, and that he has the moral qualifications, competency and learning in the law required for admission to practice law in the Commonwealth.[1] Following our receipt of Verlin's response to the rule to show cause, the Court issued an order granting oral argument in the matter. Oral argument was heard on February 2, 1999.

Initially, we must determine whether Verlin has shown that his breach of trust was not so egregious as to preclude us from even considering his petition for reinstatement.[2] *See In the Matter of Costigan,* 541 Pa. 459, 464–65, 664 A.2d 518, 520 (1995); *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

The breach of trust in this case arose from Verlin's handling of two related personal injury matters. In 1984, Verlin agreed to represent half-brothers Robert Wilson and Anthony Williams in two cases involving claims made on a single automobile insurance policy issued to James Dodson by Aetna Insurance Company. James Dodson died in 1978. Verlin filed complaints on behalf of Wilson and Williams, and scheduled depositions. Verlin became aware that Wilson had been impersonating Dodson in his communications with Aetna, and therefore at least suspected that Wilson would attempt to

---

1. Pa.R.D.E. 218(c)(6) provides:

   In the event the Board recommends reinstatement and the Supreme Court, after consideration of that recommendation, is of the view that a rule to show cause should be served upon the respondent-attorney why an order denying reinstatement should not be entered, the same shall be issued setting forth the areas of the Court's concern.

2. This threshold inquiry is somewhat coextensive with this Court's duty to determine whether Verlin has met his burden under Pa.R.D.E. 218(c)(3)(i) of proving by clear and convincing evidence that his current resumption of the practice of law would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest. The threshold inquiry articulated in *Keller* and later clarified in *Costigan* merely recognizes the fact that some forms of misconduct are so egregious that they will forever bar the disbarred attorney from successfully seeking reinstatement.

impersonate Dodson at a deposition scheduled for December 7, 1984. Accordingly, Verlin arranged for an associate at his firm who was unfamiliar with Wilson to conduct the deposition, so that Wilson's confidentiality would be preserved and any perjury on Wilson's part would remain undiscovered. Wilson proceeded to impersonate Dodson at the deposition, but after the associate took the deposition he confronted Verlin and demanded to know whether the man he had just deposed was actually James Dodson. At that point, Verlin acknowledged that Dodson was dead, and assured the associate who deposed Wilson that the firm would rid itself of the case. Despite his promise to the contrary, Verlin continued to litigate the Wilson and Williams cases, and even attempted to use the fraudulent Dodson deposition as leverage in settlement negotiations. Only in 1988, when his fellow partners discovered the fraud and confronted him, did Verlin withdraw from the Wilson and Williams cases.

As the Disciplinary Board noted in its October 30, 1995 report recommending that Verlin be disbarred, Verlin's involvement in Wilson's and Williams' fraudulent conduct was not merely "passing" or "accidental" but rather, was knowing and voluntary. By assisting Wilson to impersonate Dodson at the deposition, and by continuing to litigate Wilson's and Williams' cases following the impersonation at the deposition, Verlin damaged the public's confidence in both the legal profession and the administration of justice in the Commonwealth of Pennsylvania. Nevertheless, we agree with the Disciplinary Board that Verlin's misconduct is not so egregious as to act as an outright bar to our consideration of his petition for reinstatement.

Having concluded that Verlin's misconduct is not so egregious as to preclude this Court from considering his petition for reinstatement, we must now determine whether Verlin has met his burden of proving by clear and convincing evidence that his current resumption of the practice of law would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest, and that he has the moral qualifications, competency and learning

in the law required for admission to practice law in this Commonwealth. Pa.R.D.E. 218(c)(3)(i). In order to make this determination, we must consider the amount of time that has passed since Verlin was disbarred, as well as his efforts at rehabilitation.

Almost eight years have passed since Verlin's retroactive disbarment on September 4, 1992. While this is not an extremely lengthy period of time, we believe that it is sufficient to dissipate the detrimental impact of Verlin's misconduct on the integrity and standing of the bar, the administration of justice, and the public interest. In addition, Verlin's period of disbarment has provided this Court with an opportunity to evaluate Verlin's ongoing efforts to rehabilitate himself. As the following discussion indicates, Verlin has demonstrated a steadfast commitment to rehabilitating himself during his disbarment

Following his criminal conviction in 1991, Verlin was sentenced to 11 to 23 months incarceration. However, Verlin's sentence was subsequently reduced to four months of work release and six weeks of home monitoring, which he completed without incident. Following the conclusion of his work release and home monitoring, Verlin was placed on probation, which, owing to his exemplary behavior, was terminated nearly two years early. Following the termination of his probation, Verlin paid his court-ordered restitution and fines, and almost immediately began working as a paralegal in his son's law office.

During his disbarment, Verlin has kept up with his learning in the law by working for his son as a paralegal, reading the legal periodicals, and attending numerous legal courses sponsored by the Pennsylvania Bar Institute and the Bar Association. In addition, Verlin has served the community by volunteering his time at the Support Center for Child Advocates.

At his reinstatement hearing, Verlin presented the testimony of seven character witnesses, including a former Judge of the Court of Common Pleas of Philadelphia County, a past President of the Pennsylvania Bar Association, attorneys, and

a physician. The character witnesses testified that Verlin's resumption of the practice of law would not be subversive of the public interest or prejudicial to the administration of justice. In addition, Verlin submitted one hundred sixteen letters attesting to his good character.[3] Perhaps most importantly, the Disciplinary Board found that Verlin testified credibly as to his remorse for his actions, which he described as a breach of trust to himself, his profession and his family. In addition, Verlin assured the Hearing Committee that if he is reinstated, he will conduct himself with the highest degree of integrity.

Considering all of the foregoing facts, we believe that Verlin has proven, by clear and convincing evidence, that his resumption of the practice of law would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest, and that he has the moral qualifications, competency, and learning in the law required for admission to practice law in this Commonwealth. Pa.R.D.E. 218(c)(3)(i). We are satisfied that Verlin will conduct himself with the highest degree of integrity, as he has observed and experienced firsthand the devastating damage that the unethical practice of law often reaps on the offending lawyer, his family, friends and colleagues. In addition, we believe that Verlin has shown that he is prepared to accept his responsibility as a lawyer to conduct himself in such a manner as to protect and cultivate the integrity and standing of the bar in the eyes of the public, and to facilitate the proper administration of justice.

As this Court aptly stated in *In the Matter of Robert W. Costigan,* 541 Pa. 459, 465, 664 A.2d 518, 520 (1995):

Inevitably, meeting the requirements of rule 218(c)(3)(I) will involve the petitioner's coming to terms with the conduct that caused his disbarment. In other words, the petitioner

**3.** The extensive character testimony provided on Verlin's behalf demonstrates the high regard and reputation that he enjoyed during the thirty-five years that he practiced law in the Philadelphia area. That Verlin had such a distinguished career and was held in such high esteem by his colleagues and the community at large suggests that the serious misconduct which resulted in his disbarment was an aberration.

54

must demonstrate not only that he understands the nature of his wrongdoing, but also he must convince this court that he is not predisposed to commit future ethical wrongdoings.

Based on the record before us, we believe that Verlin has come to terms with his misconduct, and has further shown by his words and actions that he is not predisposed to commit future ethical wrongdoings. Accordingly, we hereby grant his petition for reinstatement.

Pursuant to Pa.R.D.E. 218(e), Verlin is directed to pay the expenses incurred by the Board in the investigation and processing of his petition for reinstatement.

Justice CASTILLE and Justice NEWMAN did not participate in the consideration or decision of this case.

Chief Justice FLAHERTY and Justice SAYLOR dissent.