## In the Matter of Freedman

Disciplinary Board Docket no. 103 D.B. 1992.

DONOHUE, *Member,* January 31, 2003—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania hereby submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, Allan Hyman Freedman, filed a petition for reinstatement to the bar of Pennsylvania on July

20, 2001. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania on November 19, 1992.

A reinstatement hearing was held on December 12, 2001, before Hearing Committee 2.03 comprised of Chair Steven E. Koffs, Esquire, Member Adam B. Krafczek Jr., Esquire, and Alternate Member Steven A. Bergstein, Esquire. James C. Schwartzman, Esquire, represented petitioner. Alan J. Davis represented Office of Disciplinary Counsel.

The committee filed a report on May 31, 2002, and recommended that the petition for reinstatement be granted.

No briefs on exceptions were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of August 7, 2002.

## II. FINDINGS OF FACT

This board makes the following findings of fact:

(1) Petitioner was born in 1951 and was admitted to the practice of law in Pennsylvania in 1975. He resides at Sheldrake Arms Apartments, 517 E. Lancaster Ave., Apt. 308, St. Davids, PA 19087.

(2) Petitioner was disbarred on consent in 1992 after he pleaded guilty to one count of conspiracy to distribute cocaine and marijuana, one count of possession with intent to distribute marijuana, two counts of possession with intent to distribute cocaine, two counts of conducting a financial transaction to conceal drug proceeds, one count of conducting a financial transaction to promote

drug dealing, and two counts of filing false federal individual income tax returns.

(3) In the mid-1980s petitioner was addicted to cocaine and became a participant in the drug operations of a former client. Initially, petitioner made the recommendation to the former client that he invest the proceeds of his drug operations. Petitioner ultimately stored drugs and cash generated from drug sales at his home; assisted in other money laundering activities; and stored a car that was used to transport drugs.

(4) Petitioner was sentenced to a term of imprisonment of five years, followed by five years of supervised release.

(5) While incarcerated, petitioner completed a 500-hour residential drug treatment program. In May of 1996, petitioner was released to a halfway house. In October of 1996, he returned to his residence with an electronic monitoring device. Petitioner's formal sentence ended on November 18, 1996. His supervised release was terminated on May 1, 2000, approximately 19 months early.

(6) After his release to the halfway house, petitioner began working for the law firm of Briskin & Lewis, his former law firm. His work initially included legal research and writing as well as office administration. Since the amendment of Pa.R.D.E. 217 which was adopted in December of 2000, petitioner's responsibilities have been limited to office administration. He has no client contact.

(7) If reinstated, petitioner plans to practice medical malpractice law with Briskin & Lewis. Petitioner would like to develop a practice focusing in traffic law.

(8) After his indictment but prior to his incarceration, petitioner served as a volunteer at St. Christopher's Hospital in the pediatric AIDS unit.

(9) Since June of 1997 and continuing to the present, petitioner has served as a volunteer with Reading for the Blind and Dyslexic. Petitioner volunteered 379 hours as of September 5, 2001.

(10) Petitioner has not used illegal drugs since September of 1988. Petitioner's cessation of drug usage was achieved largely through his determination to put that part of his life behind him. This determination was reinforced by his participation in drug rehabilitation programs during his incarceration.

(11) Petitioner takes full responsibility for the choices he made in becoming involved with drugs and assisting in the drug conspiracy.

(12) Petitioner demonstrated sincere remorse for his misconduct.

(13) Petitioner demonstrated competence and learning in the law and has fulfilled the requirements for continuing legal education. While incarcerated, he read Pennsylvania advance sheets. Since his release, he has continued to read the advance sheets, as well as legal journals and newspapers.

(14) Petitioner presented six character witnesses, including four attorneys and two non-lawyer members of the community. These witnesses described petitioner as having a strong reputation as a truthful, honest, and law-abiding person, who did not attempt to blame others for his predicament, and who was forthcoming in explaining his situation to others.

## III. CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has demonstrated, with clear and convincing evidence, that he possesses the moral qualifications, competency and learning in the law necessary to practice law in Pennsylvania.

(3) Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor subversive of the interests of the public.

## IV. DISCUSSION

Petitioner's request for reinstatement to the bar after disbarment is, at the outset, governed by the standard set forth by the Supreme Court of Pennsylvania in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). *Keller* sets forth a threshold that must be met before the requirements of Pa.R.D.E. 218(c)(3)(i) can be considered. This threshold inquiry is whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon the integrity and standing of the bar or the administration of justice nor be subversive of the public interest. *Keller* thus requires an examination of the underlying misconduct and a determination as to whether that conduct was so offensive as to preclude reinstatement. *In re Verlin,* 557 Pa. 47, 731 A.2d 600 (1999).

Petitioner's conviction arose out of his involvement in a drug organization from which he received no financial payment. Instead, he was provided with a steady flow

of cocaine, to which he was addicted. This addiction was a factor in his criminal behavior. Petitioner did not sell or distribute the drugs, but rather provided assistance in storing drugs and money and laundering the proceeds of illegal drug sales. There was no relationship between the illegal activities and petitioner's practice of law.

Petitioner's misconduct was very serious; however, it was not of such magnitude as to preclude petitioner's reinstatement. Petitioner's drug-related misconduct is similar to that of other attorneys who have sought and been granted reinstatement to the practice of law. In a similar matter, *In re Anonymous No. 47 D.B. 83,* 24 D.&C.4th 527 (1994), an attorney was disbarred after pleading guilty to charges of narcotics distribution and use of a telephone to facilitate the distribution. The attorney's involvement was not for profit but to subsidize his drug habit. This attorney was incarcerated for five years, followed by probation. The Supreme Court reinstated this attorney. Other cases reinforce the conclusion that petitioner's misconduct does not prevent his reinstatement. See *In re Anonymous No. 72 D.B. 86,* 33 D.&C.4th 567 (1996); *In re Anonymous No. 36 D.B. 88,* 24 D.&C.4th 519 (1994).

The board must next determine whether petitioner met his burden of proving by clear and convincing evidence that he has the moral qualifications, competency and learning in the law required for admission to practice law in Pennsylvania, and that his current resumption of the practice of law would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest. In order to make this determination, the board must consider the amount

of time that has passed since petitioner was disbarred, as well as his efforts at rehabilitation.

Petitioner was disbarred in November of 1992. Nine years had elapsed by the time of the hearing. Petitioner presented uncontroverted evidence that he has rehabilitated himself during this time. He ended his drug use in 1988 and reinforced his commitment to sobriety through successful completion of a 500-hour drug treatment program while incarcerated. Petitioner has been candid with his former associates in the practice of law and friends and family concerning his drug addiction and involvement in drug-related crimes. He enjoys a stable home life and the support of family and friends. He has performed significant community service since his release from incarceration.

Petitioner became gainfully employed after his release to a halfway house and has maintained that employment for more than five years. He maintained his competency and learning in the law by reviewing advance sheets and other legal periodicals. He fulfilled his continuing legal education requirements. If reinstated, he plans to continue working at Briskin & Lewis as an attorney representing plaintiffs in medical malpractice matters.

Petitioner is deeply remorseful for his past use of drugs and his involvement in criminal activity and is committed to maintaining his reformed lifestyle. The testimony of the character witnesses supports the conclusion that petitioner has made drastic changes in his way of life.

Considering all of the foregoing facts, the board is persuaded that petitioner has demonstrated that he has engaged in a qualitative period of rehabilitation during his nine-year disbarment. He has met his burden of proof

that he has the moral qualifications, learning in the law and competency to practice law and that his resumption of the practice of law would not have a detrimental impact on the integrity and standing of the bar, the administration of justice or the public interest. Petitioner has shown that he is ready to accept his obligation as a member of the bar in this Commonwealth.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that petitioner, Allan Hyman Freedman, be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Stewart, Peck, Watkins and Saidis dissented and would recommend the reinstatement be denied.

## ORDER

And now, April 29, 2003, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated January 31, 2003, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.