# In the Matter of Denker

Disciplinary Board Docket no. 52 D.B. 96.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SHEERER, *Member,* March 5, 2004—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

Petitioner, Aaron David Denker, filed a petition for reinstatement to the bar of Pennsylvania on May 2, 2002. By order of the Supreme Court of Pennsylvania dated February 10, 1998, petitioner was disbarred from the practice of law retroactive to May 6, 1996.

A reinstatement hearing was held on January 24, 2003, before Hearing Committee 1.09 comprised of Chair Denise Joy Smyler, Esquire, and Members Thomas G. Wilkinson Jr., Esquire and Jerry Michael Lehocky, Esquire. Petitioner was represented by James C. Schwartzman, Esquire. Petitioner testified and presented the testimony of nine witnesses.

The Hearing Committee filed a report on May 15, 2003, and recommended that the petition for reinstatement be granted.

This matter was adjudicated by the Disciplinary Board at the meeting of July 16, 2003.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner was born in 1951 and was admitted to the practice of law in Pennsylvania in 1977. His current address is 50 Cohasset Lane, Cherry Hill, NJ 08003.

(2) On October 27, 1995, petitioner executed a plea agreement and entered a guilty plea to one count of money laundering in violation of 18 U.S.C. §1956(a)(3).

(3) The facts underlying petitioner's criminal conviction are as follows:

(a) From about July 1993 to October 1993, petitioner, in exchange for a fee, knowingly and willingly assisted his client and client's associate in a scheme to launder a total of $100,000 of illegal proceeds.

(b) The scheme consisted of converting cash obtained from illegal drug activities into various negotiable instruments, each in a denomination of less than $10,000.

(c) Petitioner was paid a total of $6,500 from his client for these illegal services.

(d) On July 28, 1993, petitioner delivered to his client 53 American Express and Merchant Express money orders totaling $12,000; three Midlantic cashier checks totaling $24,000; and two personal checks totaling $14,000.

(e) On October 20, 1993, petitioner delivered to his client 54 American Express and Merchant Express

money orders totaling $15,000; one personal check for $3,000; and four Midlantic cashier checks totaling $32,000.

(4) On February 6, 1996, petitioner was sentenced to a term of 27 months of imprisonment, together with a $20,000 fine and two years of supervised release upon expiration of the prison term.

(5) Petitioner served 19 months of his sentence and thereafter served approximately four months in a halfway house in Philadelphia on a work release program.

(6) Petitioner has completed his sentence and has met all of the conditions of his supervised release.

(7) Petitioner understood at the time of the transactions that the person directing the transactions was a drug trafficker.

(8) Petitioner performed these transactions because he believed that this drug trafficker would be a continuing source of legal business for him.

(9) Petitioner claimed that he did not fully understand the prohibition on money laundering at the time of the offense.

(10) Petitioner was disbarred in Pennsylvania by order of the Supreme Court dated February 10, 1998, retroactive to May 6, 1996, the date of his temporary suspension from practice.

(11) At the time of his release from the halfway house, petitioner was employed as a loan officer in a mortgage finance company. From October 2000 to the present, petitioner has been employed by Eastern Mortgage Services in Marlton, New Jersey.

(12) Since the time of his release and due to the financial strain on his family, petitioner has worked long hours to pay off his debts and earn income.

(13) Petitioner successfully completed all of the required continuing legal education courses. He subscribes to *Trial* magazine, *Mortgage Originator,* and the Camden County Bar magazine. He also reads several other bar journals.

(14) Since his release from incarceration, petitioner has been involved in community and civic service, including working with school children and participating in programs through Jewish Family Services.

(15) Petitioner admits that, at the time of the misconduct, motivation for new clients and greed clouded his thinking. He further admits that his actions were "stupid and careless." He has taken full responsibility for his actions.

(16) Nine character witnesses testified on petitioner's behalf. These witnesses included fellow attorneys and members of petitioner's community. The testimony indicated that petitioner has a reputation as a truthful and law-abiding person who has demonstrated remorse for his past actions.

(17) If reinstated, petitioner plans to concentrate his practice in the mortgage business with an emphasis on litigation regarding residential and commercial transactions.

## III. CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude consideration of his petition for reinstatement.

(2) Petitioner has been disbarred since May 6, 1996, approximately seven years. This is an insufficient amount of time to dissipate the detrimental impact of petitioner's misconduct on the integrity and standing of the bar, the administration of justice, and the public interest.

## IV. DISCUSSION

This matter comes before the Disciplinary Board on a petition for reinstatement filed by Aaron David Denker. Petitioner was disbarred by order of the Supreme Court of Pennsylvania dated February 10, 1998. The order made the disbarment retroactive to May 6, 1996, the date of petitioner's temporary suspension. Petitioner bears the burden of proof by clear and convincing evidence that he is qualified for re-admission. Pa.R.D.E. 218(c)(3)(i).

Petitioner's request for reinstatement to the bar after disbarment is initially governed by the standard set forth by the Supreme Court of Pennsylvania in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). As a threshold matter, the board must determine whether petitioner has demonstrated that his breach of trust was not so egregious that it precludes him from reinstatement.

It is helpful for the board to examine the circumstances surrounding the facts which resulted in petitioner's conviction in making the critical determination of whether petitioner has met the *Keller* test. Petitioner engaged in

a scheme whereby he laundered money for a client who was known to him as a drug trafficker. Petitioner accepted cash from this client and exchanged it for a series of checks and money orders in denominations of less than $10,000, in order to avoid IRS reporting requirements. Petitioner knew that the cash he received was the proceeds of illegal drug transactions. Petitioner was paid $6,500 for his services. Petitioner explained that he performed these transactions because he believed that the drug trafficking client was going to be a continuing source of legal business and income for him.

Although this misconduct was reprehensible and clearly in violation of the law, the board concludes that it is not so egregious as to preclude petitioner from reinstatement. Indeed, petitioner's conduct is similar to that of other attorneys who have been disbarred and who have sought and been granted reinstatement. See *In re Anonymous No. 17 D.B. 90,* 29 D.&C.4th 124 (1995) (conduct of attorney disbarred after conviction of paying a kickback to union did not preclude reinstatement); *In re Anonymous No. 72 D.B. 86,* 33 D.&C.4th 567 (1996) (conduct of attorney who aided client in obtaining substance necessary for manufacture of methamphetamines, and who engaged in criminal act for monetary profit, reinstated after nine years); *In re Anonymous No. 47 D.B. 82,* 29 D.&C.4th 304 (1995) (attorney disbarred after conviction for conspiracy to distribute LSD, distribution of LSD, and aiding and abetting interstate travel to permit an unlawful activity reinstated after 13 years).

Having concluded that petitioner's misconduct is not so egregious as to preclude the board from considering his petition for reinstatement, the board must now deter-

mine whether petitioner has met his burden of proving by clear and convincing evidence that his resumption of the practice of law at this time would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest, and that he has the moral qualifications, competency and learning in the law required for admission to practice law in Pennsylvania. Pa.R.D.E. 218(c)(3)(i). In order to make this determination, the board must consider the amount of time that has passed since petitioner was disbarred, as well as his efforts at rehabilitation. *In re Verlin,* 557 Pa. 47, 731 A.2d 600 (1999).

Petitioner was disbarred retroactive to May 1996 and has been without a license to practice law for approximately seven years. From March of 1996 until October 1997, he served his prison sentence at the federal prison in Schuylkill County. From October 1997 to approximately February 1998, he was in a halfway house in Philadelphia and did work release. The years since the termination of his prison sentence have been spent working to pay debts and restore order to his life. Petitioner has worked in the mortgage business and has been employed by Eastern Mortgage Services since October 2000. He has attended his required CLE courses and reviewed legal journals. He has been active with Jewish Family Services.

It is evident that petitioner is working to rehabilitate himself, yet the board is of the opinion that petitioner is not ready for reinstatement. The misconduct committed by petitioner showed an egregious disregard for his responsibilities to the legal profession and society in general. Petitioner knowingly and willingly engaged in a

money laundering scheme for a client who trafficked drugs because he believed that the client would represent an ongoing business opportunity. Petitioner was motivated by pure greed and appeared to have no qualms about committing criminal acts to further his monetary desires. Given the nature of petitioner's acts, the board believes that permitting his re-admission to the bar after only seven years of disbarment would do further damage to the public trust. *In re Anonymous No. 50 D.B. 94,* no. 42 disciplinary docket no. 3 (Pa. January 31, 2002).

The board recommends that the petition for reinstatement be denied.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that petitioner, Aaron David Denker, be denied reinstatement to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Cunningham, Rudnitsky, McLaughlin and Curran dissented and would grant reinstatement.

CUNNINGHAM III, *Former Board Chair,* March 5, 2004—

## DISSENTING REPORT AND RECOMMENDATION

A majority of the board has recommended to the Supreme Court that respondent be denied reinstatement to the practice of law. Four members of the board, including myself, dissented from the recommendation of the board. Instead, we adopt the recommendation of the Hearing Committee and recommend that petitioner be reinstated.[1]

## FINDINGS OF FACT

The majority report contains 17 findings of fact. Finding no. 16 is seriously flawed, in that it fails to state a finding. Instead, it merely describes testimony presented on petitioner's behalf.

In contrast, the Hearing Committee, in its report, summarized in great detail the extensive testimony presented on behalf of petitioner and, in the discussion section of its report, found as follows:

"In sum, no witness testified that petitioner was untrustworthy or unfit to resume the practice of law. The large number of live witnesses and reference letters support the view that petitioner has developed a reputation in the community as an honest and law abiding person in whom other lawyers and clients may place their trust." (Hearing Committee report p. 15.)

---

1. Office of Disciplinary Counsel filed no exceptions to the report of the Hearing Committee recommending reinstatement.

The record includes 33 letters with evidence of petitioner's good character. Nine character witnesses testified.

The majority report at finding of fact no. 14 understates the findings of the Hearing Committee as to petitioner's community and civic service. In contrast, the Hearing Committee found that:

"Petitioner has also demonstrated his commitment and dedication to his community through working with underprivileged children in the Camden School District on student mock trials; he participates in Jewish Family Services, clothing drives and fundraising and city beautification projects, N.T. at 188-92." (Hearing Committee report p. 14.)

Furthermore, the Hearing Committee described petitioner's employment and, more importantly, stated their finding with regard to his honesty and integrity, as follows:

"Since that time, petitioner has secured employment as a loan officer in the mortgage finance business. He has demonstrated, and character witnesses have so testified, that he is well respected in the mortgage banking industry, and is recommended for his honesty and integrity. See p. 1 at tab 4." (Hearing Committee report p. 14.)

The majority report states at finding of fact no. 15 that petitioner has taken full responsibility for his actions. However, the Hearing Committee went much further than that and found as follows:

"Petitioner has testified that even though at the time of arrest he resisted an admission of wrongdoing, he has

completely and unequivocally admitted his guilt, accepted responsibility for his actions and admits that what he was doing at the time was wrong and unlawful. N.T. 170, 172, 193-95. Furthermore, *the recurring theme through each character witness who testified about petitioner's reputation was that he was and still is an honest, truthful, law-abiding person.*" (emphasis added) (Hearing Committee report p. 15.)

The evidence is simply overwhelming that the crime committed by petitioner was an aberration in an otherwise unblemished legal career and commendable life. The Hearing Committee so found and the board has not explained how or why that finding should be ignored.

## LENGTH OF DISBARMENT

The only reason the board gives for recommending denial of reinstatement is that, "Given the nature of petitioner's acts, the board believes that permitting his re-admission to the bar after only seven years of disbarment would do further damage to the public trust." Board report at p. 9. Petitioner was disbarred retroactive to May 6, 1996. That means that he has been out of the profession for approximately eight years.

The court has reinstated lawyers who have been out for less time, even where the acts committed by them have been more serious. See, for example, *In re Anonymous No. 104 D.B. 90,* 34 D.&C.4th 304 (1996) (Attorney stole client funds. Attorney disbarred on consent February 27, 1991. Attorney reinstated by court order March 1, 1996.); *In re Anonymous No. 17 D.B. 90,* 29 D.&C.4th 124 (1995) (Attorney convicted of racketeer-

ing and bribery. Attorney disbarred January 30, 1990. Attorney reinstated by court order November 7, 1995.); *In re Anonymous 36 D.B. 88,* 24 D.&C.4th 519 (1994) (Attorney disbarred as a result of conviction of distributing cocaine January 26, 1988. Attorney reinstated by court order September 13, 1994.).

Petitioner in the instant matter did nothing to harm his clients, he stole no money from them. Instead, his crime was that he was helping them launder money. His clients were drug dealers, but petitioner was not involved in their illegal drug activity. There is simply no reason on this record why petitioner should be denied reinstatement at this time and be required to go through this process again. There is no reason why he hasn't served a sufficient length of disbarment. If there were, we would expect that the Office of Disciplinary Counsel would have voiced some objection or filed an exception to the Hearing Committee's report.

Board Members Rudnitsky, McLaughlin and Curran join in this dissent.

## ORDER

And now, May 28, 2004, upon consideration of the report and recommendations of the Disciplinary Board and dissenting report and recommendation dated March 5, 2004, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Madam Justice Newman dissents and would deny reinstatement.