## In the Matter of Schofield

Disciplinary Board Docket no. 25 D.B. 1997.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

TETI, *Vice-Chair,* March 23, 2004—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court

of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On June 20, 2002, petitioner, Frederick S. Schofield III, filed a petition for reinstatement to the bar of the Supreme Court of Pennsylvania. Petitioner was disbarred by order of the Supreme Court dated February 24, 1997.

A reinstatement hearing was held on January 15, 2003, before Hearing Committee 2.06 comprised of Chair Joseph R. D'Annunzio, Esquire, and Members Anton H. Rosenthal, Esquire, and James J. Byrne, Esquire. Petitioner was represented by James C. Schwartzman, Esquire.

The Hearing Committee filed a report on August 5, 2003, and recommended that the petition for reinstatement be granted.

No briefs on exceptions were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of November 19, 2003.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner was born in 1948 and was admitted to the practice of law in Pennsylvania in 1976. He currently resides at 43 West Ferry Street, New Hope, PA 18938. His current business address is 1955 Street Road, Bensalem, PA 18938.

(2) Beginning in 1978 and continuing until his disbarment, petitioner was employed as a solo practitioner in New Jersey.

(3) Between July 1995 and July 1996, petitioner settled personal injury cases for six clients. In each of these client matters, petitioner drew the amount of his contingency fee from his trust account before the settlement funds had actually cleared or been received in the account.

(4) In one instance the fee was drawn two days early, in another it was drawn four weeks early. Typically, it was drawn two to three weeks early.

(5) Petitioner's actions came to light when a check drawn from his trust account was returned for insufficient funds in August 1996. This triggered an audit by the State of New Jersey, which examined all records and found a total of six instances when petitioner had advanced his attorney fees before settlement checks had cleared in the account.

(6) The New Jersey audit found no wrongdoing other than the six instances in which petitioner had drawn attorneys fees prematurely.

(7) Petitioner cooperated fully in the audit.

(8) No client was injured as a result of petitioner's actions. Each of the clients received all funds to which they were entitled prior to the audit that discovered the improper advances.

(9) As a result of these actions, petitioner was disbarred on consent from the practice of law in the State of New Jersey by order of the Supreme Court of New Jersey dated September 25, 1996.

(10) Following his disbarment in New Jersey, and by way of reciprocal discipline, petitioner was disbarred from the practice of law in the Commonwealth of Pennsylvania by order of the Supreme Court of Pennsylvania dated February 24, 1997.

(11) During the period of his disbarment, petitioner has written and promoted three novels and screenplays, formed a corporate publishing venture, and has had literary agents working on his behalf. The books were eventually published and sold in certain areas of the country.

(12) Beginning in January 2002 and continuing to the present, petitioner has been employed as a licensed real estate salesperson and has worked on a commission basis. Petitioner is associated with Long & Foster Real Estate in Yardley, Pennsylvania.

(13) Petitioner received a Pennsylvania Notary Public appointment in March 2002.

(14) Petitioner has an outstanding debt to the Internal Revenue Service in the amount of $26,500.

(15) Petitioner is a recovering alcoholic. At the time of the events that led to his disbarment, petitioner was at the height of his active alcoholism and was having periods of blackouts.

(16) In May 1996, petitioner began treating with a physician who specialized in alcohol and drug abuse. However, at that time, the treatment did not resolve his alcoholism.

(17) Eventually, petitioner began attending Alcoholics Anonymous meetings. As he began to work through the 12 steps of AA, he came to recognize the fact of his

alcoholism, and thereafter became a regular participant in AA meetings.

(18) Petitioner consulted counsel regarding the possibility of reinstatement to the Bar of Pennsylvania. He began treatment with Richard Limoges M.D., a recognized expert in treating alcoholism. Dr. Limoges introduced petitioner to the Philadelphia chapter of Lawyers Concerned for Lawyers (LCL). Within a week, petitioner became an active participant in LCL.

(19) Petitioner currently attends AA meetings, as well as meetings of the Trenton, New Jersey chapter of LCL. He attends three to four support meetings per week.

(20) In June 2002, petitioner voluntarily entered into a sobriety monitor program. Pursuant to that program, petitioner has met regularly with his sobriety monitor, who is responsible for determining whether petitioner has maintained his sobriety.

(21) Petitioner's sobriety monitor has concluded that petitioner has at all times remained faithful to his objectives and has performed his obligations under the program contract.

(22) At the time of the reinstatement hearing, petitioner had been sober for approximately two years.

(23) Petitioner volunteers as a speaker at LCL programs and CLE programs organized by LCL.

(24) Petitioner has demonstrated sincere remorse for his misconduct. He testified convincingly of the shame he brought to his family.

(25) Petitioner has recognized his wrongdoing and takes full responsibility for his actions.

(26) If reinstated, petitioner hopes to practice criminal and real estate law in Bucks County, Pennsylvania. He intends to devote a portion of his practice to rendering pro bono services to persons in need.

(27) Petitioner fulfilled his continuing legal education requirements for reinstatement. He reads the advance sheets and other law related journals. He occasionally assists other attorneys in putting together briefs or motion responses.

(28) Petitioner devotes significant time to civic and community activities. He volunteers for the Bucks County Library System, and is an active member of the Rotary Club and the Veterans of Foreign Wars, among other activities.

(29) Six character witnesses testified at the reinstatement hearing. These witnesses testified that petitioner enjoys a strong reputation in the community as a truthful, honest, and law-abiding person who has demonstrated sincere remorse for his past actions.

(30) Petitioner offered a number of letters from attorneys who support petitioner's reinstatement.

(31) Office of Disciplinary Counsel did not object to petitioner's reinstatement.

### III. CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has demonstrated, with clear and convincing evidence, that he possesses the moral qualifica-

tions, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor subversive of the interests of the public.

## IV. DISCUSSION

This matter comes before the Disciplinary Board on a petition for reinstatement filed by Frederick S. Schofield III. Petitioner was disbarred on February 24, 1997, by order of the Supreme Court of Pennsylvania. This disbarment was reciprocal discipline based on petitioner's disbarment on consent from the practice of law in New Jersey on September 25, 1996.

Petitioner's request for reinstatement to the bar after disbarment is initially governed by the standard set forth by the Supreme Court of Pennsylvania in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). As a threshold matter, the board must determine whether petitioner has demonstrated that his breach of trust was not so egregious that it precludes him from reinstatement.

Petitioner's disbarment in New Jersey was based on his actions over a one-year period involving six clients. Petitioner settled personal injury cases for each of these clients and drew the amount of his contingency fee from his trust account before the settlement funds had actually been cleared, or had been received, in the account. Petitioner's actions were discovered when a check from his trust account was returned for insufficient funds. This triggered an audit by the State of New Jersey, which

examined all of petitioner's records and found a total of six instances of misconduct. Petitioner cooperated fully in the audit and consented to be disbarred.

While petitioner may not seek reinstatement in the State of New Jersey pursuant to that jurisdiction's disciplinary rules, he is permitted to seek reinstatement in Pennsylvania, as this jurisdiction's rules do not mandate an identical discipline. Pa.R.D.E. 216. Upon review of the underlying offense and the case law, the board concludes that petitioner's misconduct is not so egregious as to preclude petitioner from reinstatement. Petitioner committed irregularities in disbursing funds from his escrow account. No clients were harmed as a result of his actions, and each client promptly received all settlement funds due and owing. Petitioner did not engage in conversion of funds. Indeed, the court has reinstated attorneys who have engaged in more egregious behavior than petitioner, such as those attorneys who convert client or law firm funds to their own use. *Matter of Costigan,* 541 Pa. 459, 664 A.2d 518 (1995).

Having concluded that petitioner's misconduct is not so egregious as to preclude the board from considering his petition for reinstatement, the board must now determine whether petitioner has met his burden of proving by clear and convincing evidence that his resumption of the practice of law at this time would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest, and that he has the moral qualifications, competency and learning in the law required for admission to practice law in Pennsylvania. Pa.R.D.E. 218(c)(3)(i). In order to make this determination, the board must consider the

amount of time that has passed since petitioner was disbarred, as well as his efforts at rehabilitation. *In re Verlin,* 557 Pa. 47, 731 A.2d 600 (1999).

Petitioner has been without a license to practice law in Pennsylvania for approximately seven years. This is a lengthy period of time in light of his underlying misconduct, and is sufficient to dissipate the taint of petitioner's misconduct on the integrity of the bar and the public interest. The uncontroverted evidence presented at the hearing clearly and convincingly demonstrates that during these seven years, petitioner has worked to rehabilitate himself.

Petitioner confronted his issues with alcoholism and is now sober. He sought psychological treatment and joined Alcoholics Anonymous and Lawyers Concerned for Lawyers. He received his realtor's license and an appointment as a Notary Public. Petitioner has an excellent record of civic service. He presented numerous character witnesses who spoke convincingly of petitioner's steps to overcome his alcoholism and to transform his life. These witnesses described petitioner as an honest person who has sincere remorse for his past actions, and who poses no threat to the legal community or the public if reinstated.

Petitioner fulfilled his requirements for continuing legal education, and he regularly reads the advance sheets, the *Legal Intelligencer,* the *PA Law Weekly,* and other legal journals in an effort to apprise himself of the current state of the law.

Petitioner testified credibly of his remorse for his actions, expressing great regret for the embarrassment and shame he caused his family. If reinstated, petitioner hopes

to practice criminal and real estate law in the Bucks County area.

Considering all of these facts, the board is persuaded that petitioner has demonstrated that he has engaged in a qualitative period of rehabilitation during his disbarment. Petitioner has met his burden of proving that he has the moral qualifications, learning and competence to practice law, and his resumption of the practice of law will not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest. The board recommends that the petition for reinstatement be granted.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, Frederick S. Schofield III, be reinstated to the practice of law in this Commonwealth.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

## ORDER

And now, June 29, 2004, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated March 23, 2004, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.