**In re Stapleton**

436

Disciplinary Board Docket no. 47 D.B. 1993.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SHEERER, *Member,* April 13, 2005—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court

of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Larrick B. Stapleton filed a petition for reinstatement to the bar of the Supreme Court of Pennsylvania on February 5, 2004. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated July 1, 1993.

A reinstatement hearing was held on July 27, 2004, before Hearing Committee 1.16 comprised of Chair James D. Golkow, Esquire, and Members Theresa M. Italiano, Esquire and George D. DiPilato, Esquire. Petitioner was represented by William J. Honig, Esquire. Petitioner presented the testimony of 10 witnesses and testified on his own behalf.

The committee filed a report on January 21, 2005, finding that petitioner met his burden of proof as to the requirements for reinstatement and recommending that the petition for reinstatement be granted.

This matter was adjudicated by the Disciplinary Board at the meeting of March 16, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner is Larrick B. Stapleton. He was born in 1936 and was admitted to the practice of law in Pennsylvania in 1963. His address is 812 Wickfield Road, Wynnewood, PA 19096.

(2) Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated July 1, 1993.

(3) In 1991 petitioner was named co-executor of the estate of Thomas J. Bushyager. Petitioner acted as both executor and estate attorney as the other co-executor was not actively involved.

(4) Petitioner set up an estate account and failed to properly deposit checks of approximately $335,000 in that account, instead depositing the checks into his personal account.

(5) Approximately $200,000 of the funds was distributed to the appropriate heirs by petitioner.

(6) At this time petitioner held a power of attorney for Mary Poole and handled her financial affairs.

(7) Petitioner converted funds from Mary Poole by drawing checks to himself or to cash.

(8) Petitioner removed more than $100,000 from the Poole account over a period of two years.

(9) During the time frame in question, petitioner's secretary, Chantal St. Phard, embezzled approximately $400,000 from petitioner. This included amounts deposited by petitioner into his own accounts which were Bushyager estate funds.

(10) Ms. St. Phard was prosecuted, convicted and sentenced to a period of seven years of probation. Petitioner advised the police of her crimes even though he knew it would reveal his own crimes. Petitioner cooperated with police in the prosecution of his secretary.

(11) Petitioner admitted that his neglect and mismanagement allowed his secretary to act without proper supervision.

(12) The total amount of loss was approximately $110,000[1] for the Poole account and $160,000 for the Bushyager estate.

(13) The Bushyager estate was made whole by settlement through petitioner's malpractice carrier.

(14) Criminal charges were brought against petitioner and he ultimately pleaded guilty on February 20, 1997, to one count of mail fraud and one count of interstate transportation of stolen securities.

(15) Petitioner was sentenced to 18 months incarceration and restitution of $10,000 to the Mary Poole estate and $10,000 to the Client Security Fund.

(16) Petitioner served approximately eight months at Fort Dix, where he performed volunteer work, including teaching English to fellow prisoners who were illiterate. He also taught courses in drug and alcohol addiction and helped organize and run Alcoholics Anonymous meetings for prisoners.

(17) Petitioner served the remaining portion of his sentence at the federal medical center in Rochester, Minnesota, where he had to undergo medical treatment.

(18) Petitioner was placed in a half way house in Philadelphia in 2000.

(19) Petitioner reimbursed the Pennsylvania Lawyers Fund for Client Security in full, with interest.

(20) All restitution, fines and costs were paid to the United States District Court for the Eastern District of Pennsylvania, as well as all other persons who suffered loss as a result of petitioner's misconduct.

---

1. This was later adjusted for payments which were received by Ms. Poole, and restitution was approximately $45,000.

(21) Petitioner successfully completed his probation in 2002.

(22) Petitioner admits that he took client funds without permission or justification.

(23) Petitioner is a recovering alcoholic, having been sober for the past 10 years.

(24) Dr. Richard Limoges testified at the hearing that petitioner has been sober for more than 10 years and that, after such long-term sustained remission, he would not likely suffer a relapse of active drinking.

(25) Subsequent to his release from prison, petitioner became involved with the Lawyers Concerned for Lawyers Sobriety Monitor program. Walter Bartholomew, Esquire, is his monitor.

(26) Subsequent to his release from prison, petitioner became a member of the Quakers and has been active in that group on drug concerns.

(27) Petitioner is an active member of Alcoholics Anonymous and has presented seminars on addiction and recovery at Temple Law School.

(28) Petitioner works as a law clerk for the Law Offices of Anna Durbin. He has been employed in that capacity since 2000 and works approximately 20 hours per week.

(29) Ms. Durbin testified at the hearing and attested to petitioner's excellent legal abilities.

(30) If readmitted, petitioner plans to remain with Attorney Durbin.

(31) Eight other character witnesses testified on petitioner's behalf.

(32) These witnesses all described petitioner's reputation in the community as good for truthfulness and honesty. These witnesses support petitioner's readmission.

(33) Petitioner fulfilled all of his Continuing Legal Education requirements for readmission.

(34) Petitioner expressed sincere remorse for his crimes and did not make excuses for his actions. He suffered humiliation and shame as the result of his actions.

## III. CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has demonstrated by clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner has demonstrated that his resumption of the practice of law within the Commonwealth will be neither detrimental to the integrity and standing of the bar or administration of justice nor subversive of the public interest.

## IV. DISCUSSION

This matter comes before the Disciplinary Board on a petition for reinstatement filed by Larrick B. Stapleton. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated July 1, 1993. Petitioner bears the burden of proof by clear and convincing evidence that he is qualified for readmission. Pa.R.D.E. 218(c)(3)(i).

Petitioner's request for reinstatement following disbarment is initially governed by the standard set forth by the Supreme Court in *Office of Disciplinary Counsel v.*

*Keller,* 509 Pa. 573, 506 A.2d 872 (1986). As a threshold matter, the board must determine whether petitioner has demonstrated that his breach of trust was not so egregious that it precludes him from reinstatement.

Petitioner improperly withdrew funds from two estates to cover personal expenses as well as to mitigate shortfalls made by the actions of his secretary, who was embezzling large amounts of funds at that time. Petitioner entered a plea of guilty to one count of mail fraud and one count of interstate transportation of a stolen security.

These are serious acts, as misappropriation of entrusted funds strikes at the heart of a lawyer's professional obligations. Petitioner's actions not only brought embarrassment and shame to himself and his family, as he testified, but also damaged the reputation of the legal profession and, most grievously, took advantage of those who gave petitioner the funds for safekeeping. Despite the gravity of this misconduct, the court has permitted attorneys who have committed similar acts of misconduct to be reinstated. *Office of Disciplinary Counsel v. Costigan,* 541 Pa. 459, 664 A.2d 518 (1995).

Having concluded that petitioner's misconduct is not so egregious as to preclude reinstatement, the board must now determine whether petitioner has met his burden of proving by clear and convincing evidence that his resumption of the practice of law at this time would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest, and that he has the moral qualifications, competency and learning in the law required for admission to practice law in Pennsylvania. Pa.R.D.E. 218(c)(3)(i). In

order to make this determination, the board must consider the amount of time that has passed since petitioner was disbarred, as well as his efforts at rehabilitation. *In re Verlin,* 557 Pa. 47, 731 A.2d 600 (1999).

Petitioner has been without a license to practice law for nearly 10 years. Evaluation of petitioner's disbarment period suggests that it was a time of successful qualitative rehabilitation, sufficient to dissipate the taint of his misconduct. During that time he served his criminal sentence and probation and made full restitution. Petitioner overcame an alcohol addiction and has worked to maintain sobriety for 10 years. He is very involved with Alcoholics Anonymous and other addiction programs, including teaching a course on addiction at Temple Law School.

Petitioner has worked as a paralegal since 1999, and currently works for Anna M. Durbin, Esquire. He has done very well in that capacity and intends to continue working for Ms. Durbin if reinstated. Petitioner kept current on the law due to his legal employment, and fulfilled his required Continuing Legal Education credits for reinstatement.

Petitioner expressed sincere remorse for his misconduct. Numerous witnesses attested that respondent's reputation is excellent and he would be an asset to the legal community if reinstated.

Considering all of the above facts, the board is persuaded that petitioner has engaged in a qualitative period of rehabilitation during his disbarment. Petitioner has met his burden of proving that he has the moral qualifications, learning in the law and competency to practice law, and his resumption of the practice of law will not

have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, Larrick B. Stapleton, be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Curran did not participate in the matter.

Board Members McLaughlin, Brown, Pietragallo and Nordenberg did not participate in the March 16, 2005 adjudication.

## ORDER

And now, July 12, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated April 13, 2005, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.