**In re Barish**

Disciplinary Board Docket no. 50 D.B. 1996.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SUH, *Member,* June 10, 2005—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On March 11, 2004, Kenneth S. Barish Jr. filed a petition for reinstatement to the bar of the Supreme Court

of Pennsylvania. Petitioner was disbarred on consent by order of the Supreme Court dated May 30, 1996.

A reinstatement hearing was held on October 26, 2004, before Hearing Committee 4.10 comprised of Chair David S. Pollock, Esquire, and Members Joseph M. Gaydos Jr., Esquire, and David Paul Andrews, Esquire. Petitioner presented the testimony of two witnesses and testified on his own behalf.

The committee filed a report on February 18, 2005, finding that petitioner met his burden of proof as to the requirements for reinstatement and recommending that the petition for reinstatement be granted.

This matter was adjudicated by the Disciplinary Board at the meeting of March 16, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, Kenneth S. Barish Jr., was born in 1966 and was admitted to practice law in the Commonwealth of Pennsylvania in 1992. His current address is Threshing Barn, Cosford Grange, Warwickshire CV21 1HT, England.

(2) Upon being admitted to the bar, petitioner began practicing with Stanley Selkowitz, Esquire.

(3) Petitioner and Mr. Selkowitz operated their law practice from offices known as Selkowitz and Barish.

(4) Attorney Edward Weingart also practiced law from the same suite of offices during the time frame in question and was of counsel to Selkowitz and Barish.

(5) In November 1993, Mr. Weingart was retained by Suzanne Null and Donna Reed to handle the administration of the estate of Corinne C. Reed.

(6) On January 17, 1994, decedent's real property was sold for a net amount of $74,271.26, which amount was held in escrow by a settlement agent pending court approval of payment of the funds to the estate.

(7) On or about April 28, 1994, petitioner received a check in the amount of $74,271.36 from the escrow agent, representing the proceeds from the sale of decedent's real property, and deposited the proceeds into an Integra Bank checking account.

(8) Proceeds from the Reed estate were used to pay the law firm's various operating expenses.

(9) Despite repeated inquiries by Ms. Null and Ms. Reed, petitioner denied receipt of the proceeds and further caused the estate to fall delinquent in the payment of inheritance taxes.

(10) After many months of repeated, intentional misrepresentations to Ms. Null and Ms. Reed, petitioner, as of December 22, 1995, was still entrusted with at least $65,830.01 on behalf of the estate.

(11) Petitioner admitted that he was responsible for misappropriation of funds from the estate in the amount of $65,830.01.

(12) By March 27, 1996, petitioner and Mr. Weingart eventually paid to the estate the entirety of the proceeds then owing, with interest, in response to inquiries from Henry Rea Jr., Esquire, who had been retained as counsel for Ms. Null.

(13) By letter dated March 28, 1996, petitioner was informed by the Disciplinary Board that a complaint had been filed against him regarding the misconduct.

(14) Upon being notified of the complaint, petitioner resigned from the practice of law and was disbarred on consent by order of the Supreme Court dated May 30, 1996.

(15) Following his disbarment, petitioner was employed as a database technician at Aspen Systems Corporation. This employment lasted from November 1996 through November 1997.

(16) Petitioner left Aspen for a position with Healthcare Recoveries Inc., where he was employed as a claims examiner from December 1997 through April 2000.

(17) While employed by Healthcare Recoveries, petitioner underwent monthly training in the law of all 50 states, comprising insurance subrogation, auto insurance law and rights of recovery, ERISA reviews, federal pre-emption doctrines, and federal rights of recovery under ERISA.

(18) Petitioner began work for Marconi Communications Inc. in May of 2000, where he is currently employed as director of Contract Management.

(19) Petitioner's job duties require him to act as a conduit between his company's commercial negotiation department and the legal department. Petitioner does not engage in the practice of law.

(20) Petitioner's superiors and colleagues are aware that petitioner has a law degree and is not currently licensed to practice law, but do not know that he is currently disbarred.

(21) Petitioner's performance reviews with Marconi have been exemplary.

(22) Petitioner is currently enrolled in the legal master's program at Warwick University in Great Britain, where he is pursuing an LLP in international law.

(23) During, and in connection with, his employment with Marconi, petitioner purchased and read several law books.

(24) Petitioner fulfilled his required Continuing Legal Education credits for reinstatement.

(25) Two character witnesses testified on petitioner's behalf.

(26) Robert Jordan has known petitioner for four years in a professional and personal capacity. He is aware of petitioner's disbarment and the reasons therefore. Mr. Jordan opined that respondent has a general reputation for truthfulness and honesty. If petitioner is reinstated, Mr. Jordan would not hesitate to use him as an attorney or refer a family member to him for legal representation.

(27) Clayton Morrow has been a licensed attorney since 1988 and has known petitioner since approximately 1992. He is aware of petitioner's disbarment and the reasons therefore. Attorney Morrow has always considered petitioner to be honest and straightforward, and the misconduct was aberrational in nature. Attorney Morrow supports petitioner's readmission to the bar and would not hesitate to refer clients to him, or work with him in a professional capacity.

(28) Three character letters were admitted into evidence in support of petitioner's reinstatement. All three letters attested to petitioner's honesty and integrity.

Petitioner candidly advised the Hearing Committee that he never volunteered to these individuals that he had been disbarred; just that he was not currently licensed to practice law.

(29) Petitioner expressed sincere remorse for his misconduct. He did not offer excuses for the misconduct but stated that he felt it was an act of desperation.

(30) Petitioner currently lives in England due to a job transfer with Marconi Communications. He would like to be reinstated in the event that he decides to practice law when he returns to the United States.

## III. CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has demonstrated, with clear and convincing evidence, that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not be detrimental to the integrity and standing of the bar or administration of justice, nor subversive of the interests of the public.

## IV. DISCUSSION

This matter comes before the Disciplinary Board on a petition for reinstatement filed by Kenneth S. Barish Jr. Petitioner was disbarred on consent by order of the Supreme Court dated May 30, 1996. Petitioner bears the burden of proof by clear and convincing evidence

that he is qualified for readmission. Pa.R.D.E. 218(c)(3)(i).

Petitioner's request for reinstatement following disbarment is initially governed by the standard set forth by the Supreme Court in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). As a threshold matter, the board must determine whether petitioner has demonstrated that his breach of trust was not so egregious that it precludes him from reinstatement.

Petitioner admitted to misappropriating approximately $65,000 from an estate. The monies were used to pay office bills and debts. These monies were eventually repaid to the estate with interest.

While certainly serious in nature, this misconduct is not so egregious as to preclude consideration of petitioner's request for reinstatement. The board may look to several cases that enumerate a litany of acts as equally reprehensible as those involved in the instant matter. *In re Perrone,* 565 Pa. 563, 777 A.2d 413 (2001) (Attorney Perrone's conviction of theft by deception, tampering with public records, securing execution of documents by deception, and unsworn falsification to authorities was not egregious enough to prohibit consideration of the reinstatement petition); *In re Verlin,* 557 Pa. 47, 731 A.2d 600 (1999) (Attorney Verlin's conviction of criminal conspiracy, perjury, false swearing, and theft by deception was not so egregious to prohibit consideration of the reinstatement petition).

Having concluded that petitioner's misconduct is not so egregious as to preclude reinstatement, the board must now determine whether petitioner has met his bur-

den of proving, by clear and convincing evidence, that his resumption of the practice of law at this time would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest and that he has the moral qualifications, competency, and learning in the law required for admission to practice law in Pennsylvania. Pa.R.D.E. 218(c )(3)(i). In order to make this determination, the board "must consider the amount of time that has passed since [petitioner] was disbarred as well as his efforts at rehabilitation." *In re Verlin,* 557 Pa. 47, 731 A.2d 600, 602 (1999).

Petitioner has been without a license to practice law for approximately nine years. Evaluation of petitioner's disbarment period suggests that it was a time of successful qualitative rehabilitation, sufficient to dissipate the taint of his misconduct. During that time petitioner found non-legal employment, starting with a minimum wage job and working up to his current employment with Marconi Communications as director of Contract Management. Petitioner presently resides in England and attends Warwick University where he is enrolled in a legal master's program. Petitioner has expressed remorse and shame for his actions and is working hard to put this grievous incident behind him.

Petitioner fulfilled his Continuing Legal Education requirements and has kept apprised of the law in different areas as part of his job training with his employment, particularly with Healthcare Recoveries, where he was a claims examiner. While petitioner is content with his employment status for the time being, and does not anticipate practicing law, he would like to be reinstated in order to keep his options open for the future.

Two character witnesses helped to establish that petitioner's misconduct was an aberration and that petitioner would be an asset to the legal community if reinstated. Robert Jordan and Clayton Morrow both offered opinions as to petitioner's good reputation for truthfulness and honesty and support petitioner's readmission to the bar of Pennsylvania.

Considering all of the above facts, the board is persuaded that petitioner has engaged in a qualitative period of rehabilitation during his disbarment. Petitioner has met his burden of proving that he has the moral qualifications, learning in the law and competency to practice law, and his resumption of the practice of law will not have a detrimental impact on the integrity and standing of the bar, the administration of justice or the public interest.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, Kenneth S. Barish Jr., be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Robert E. J. Curran did not participate in the matter.

Board Members McLaughlin, Brown, Pietragallo and Nordenberg did not participate in the March 16, 2005 adjudication.

564

## ORDER

And now, August 25, 2005, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated June 10, 2005, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.