731 A.2d 129

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Ernest D. PREATE, Jr., Respondent.**

**No. 136 Disciplinary Docket No. 3.**

Supreme Court of Pennsylvania.

Argued Feb. 1, 1999.

Decided June 23, 1999.

Edwin W. Frese, Jr., Lemoyne, for Disciplinary Bd.

J. Shane Creamer, Chestnut Hill, John G. McCormick, James C. Schwartzman, Philadelphia, for Ernest D. Preate, Jr.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### ORDER

PER CURIAM:

Upon consideration of the Report and Recommendations of the Disciplinary Board dated July 14, 1998, and following oral argument, it is hereby

ORDERED that Ernest D. Preate, Jr., be and he is suspended from the Bar of this Commonwealth for a period of five years retroactive to August 16, 1995, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ORDERED that respondent shall pay costs to the Disciplinary board pursuant to Rule 208(g), Pa.R.D.E.

Justice NIGRO files a dissenting statement in which Justice ZAPPALA joins.

NIGRO, Justice, dissenting.

The Court has entered an Order suspending Respondent from the practice of law for five years, retroactive to the date of his temporary suspension on August 16, 1995. I believe that the serious nature of Respondent's misconduct, when considered in light of the fact that he was the District Attorney of Lackawanna County and the Attorney General of the Commonwealth of Pennsylvania when he committed his misconduct, demands that Respondent be disbarred. Therefore, I respectfully dissent.

On June 9, 1995, Respondent entered a plea of guilty to one count of mail fraud, 18 U.S.C. § 1341, which carries a maximum penalty of five years' imprisonment and/or a fine of $250,000. On December 5, 1995, Respondent was sentenced to a fourteen-month period of imprisonment, a fine of $25,000,

and two years of supervised release, including three hundred hours of community service.[1]

On August 16, 1995, this Court entered an Order placing Respondent on temporary suspension from the practice of law and referring the matter to the Disciplinary Board pursuant to Pa. R.D.E. 214(f)(1). A Petition for Discipline against Respondent was filed by the Office of Disciplinary Counsel on December 23, 1996. A Hearing Committee held hearings on the Petition for Discipline, and on July 7, 1997, the Hearing Committee issued a report recommending that Respondent be suspended from the practice of law for three and one half years, retroactive to the date that he was placed on temporary suspension. The Office of Disciplinary Counsel filed exceptions to the Hearing Committee's report, and the matter was subsequently adjudicated by the Disciplinary Board on January 16, 1998. On July 14, 1998, the Disciplinary Board issued a report and recommendation that Respondent be suspended from the practice of law for five years, retroactive to the date that Respondent was placed on temporary suspension.[2] This Court thereafter issued a rule upon Respondent to show cause why he should not be disbarred.[3] Oral argument was heard on the matter on February 1, 1999.

**1.** Rule 214(i) of the Pennsylvania Rules of Disciplinary Enforcement (hereinafter cited as the Pa. R.D.E.) states that a 'serious crime' is any crime punishable by imprisonment of one year or upward in this or any other jurisdiction. Pa. R.D.E. 214(i). Therefore, Respondent's conviction of one count of mail fraud, which is punishable by up to five years of imprisonment, constitutes a serious crime for purposes of the rules of disciplinary enforcement, and forms an independent basis for the imposition of discipline pursuant to Pa. R.D.E. 203(b)(1).

**2.** Of the sixteen members on the Disciplinary Board, two members recused themselves from considering the appropriate discipline to be meted out against Respondent. An eight-member majority of the remainder of the Board issued the report recommending that Respondent be suspended from the practice of law for five years retroactive to the date of his temporary suspension. The remaining six members of the Disciplinary Board dissented, and would instead recommend that Respondent be disbarred for his egregious misconduct.

**3.** Pursuant to Pa. R.D.E. 208(e)(3), this Court has the authority, in its discretion, to issue a rule to show cause why an order of disbarment should not be entered whenever the Disciplinary Board recommends a sanction less than disbarment.

"The primary purpose of our system of lawyer discipline is to protect the public from unfit attorneys and to maintain the integrity of the legal system." *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 579, 506 A.2d 872, 875 (1986) (citations omitted). To that end, in measuring the degree of discipline that should be imposed against Respondent, we must review the events underlying his criminal conviction for mail fraud. *See, e.g., Office of Disciplinary Counsel v. Eilberg*, 497 Pa. 388, 391, 441 A.2d 1193, 1195 (1982).

As noted by the Disciplinary Board in its report, the facts underlying Respondent's conviction are as follows between 1985 and 1988, while Respondent held the position of the District Attorney of Lackawanna County, Respondent solicited, either directly or indirectly, illegal cash contributions totaling approximately twenty thousand dollars from nineteen owner-operators of videopoker gambling machines in and around Lackawanna County. In order to conceal these illegal cash contributions from the authorities and the voting public, from 1985 through February of 1994, Respondent, while either the District Attorney of Lackawanna County or the Attorney General, caused false and materially misleading campaign finance reports to be filed under oath with the Commonwealth of Pennsylvania Bureau of Elections.[4] In addition, Respondent publicly denied any wrongdoing in connection with the illegal cash contributions to his campaign committee until he admitted his guilt by way of entering a guilty plea to one count of mail fraud.

As these facts demonstrate, this case does not merely pose the question of what degree of discipline should be imposed upon an attorney who pled guilty in federal court to a charge of mail fraud. Rather, it raises the question of what degree of discipline should be imposed upon an attorney who solicited and accepted illegal cash contributions to his campaign committee and then repeatedly perjured himself in an effort to conceal the illegal nature of the cash contributions from the

4. Pursuant to 25 P.S. § 3249(b), by submitting willfully false and misleading statements to the Election Bureau, Respondent committed perjury.

authorities and the voting public while he successfully campaigned to first retain his position as District Attorney of Lackawanna County, and then to attain the position of Attorney General of the Commonwealth of Pennsylvania.

As noted by the Disciplinary Board's six-member dissent, "the true distinguishing factor in the case at bar is that no other case involves a member of the bar who rose to the highest levels of Pennsylvania government as did [Respondent]." By successfully campaigning to become first the District Attorney of Lackawanna County, and then the Attorney General, Respondent placed himself in a unique position to serve the common good, advance the legal profession, and uphold the public's faith in our justice system. At the same time, Respondent placed himself squarely within the public eye, and accepted the responsibility to conduct himself with only the highest degree of integrity. It is in this context that Respondent's misconduct must be judged.

By violating the very laws that he swore to uphold, Respondent severely damaged the public's confidence in our justice system. Likewise, Respondent's misconduct dealt a serious blow to the public's perception of the legal profession. In addition, although Respondent concedes that he committed his misconduct while he was a candidate for elected office, he fails to acknowledge the profound negative impact that his misconduct occasioned upon the public's perception of the integrity of the electorate process. Only after the citizens of this Commonwealth elected Respondent to be their Attorney General did they learn that Respondent had solicited and accepted illegal cash campaign contributions from videopoker gambling machine owner-operators, and then attempted to conceal his illegal activities from both the authorities and the voting public by repeatedly perjuring himself before the Bureau of Elections.[5]

---

**5.** Respondent makes much of the fact that the perjury he committed by filing false reports with the Bureau of Elections does not constitute a felony. However, perjury in connection with an election report filed under oath is a serious crime, punishable by imprisonment of not less than three months nor more than two years, and/or a fine of up to $500. 25 P.S. § 3502. In addition, Article II, Section 7 of the Pennsylvania

Respondent argues that his military service in Vietnam, his public service, his community involvement, and his remorse should be considered in mitigation of his serious misconduct. Respondent is correct that his exemplary military service, his community involvement, and his remorse should be considered in mitigation of his misconduct. However, I do not agree with Respondent's contention, accepted by the majority of the Disciplinary Board, that his record of public service as the District Attorney of Lackawanna County and the Attorney General should be considered in mitigation of his misconduct. By his own admission, Respondent committed the misconduct that formed the basis of his eventual guilty plea to one count of mail fraud while he was the District Attorney of Lackawanna County and the Attorney General. In addition, to accept this public service in mitigation of Respondent's misconduct would be to ignore the fact that Respondent would most likely not have retained his position as the District Attorney of Lackawanna County or attained the position of Attorney General had he not concealed his solicitation and acceptance of illegal cash contributions from the authorities and the voting public.

The public rewarded Respondent for his years of public service as an assistant district attorney by electing him District Attorney of Lackawanna County. Respondent thereafter betrayed the public's trust in him—and jeopardized the integrity not only of the Bar, but also of the electorate system of this Commonwealth. More importantly, Respondent made a mockery of the law enforcement positions that he held—and thereby severely damaged the public's confidence in the justice system that he swore to uphold. Given the magnitude of

State Constitution states that perjury is an 'infamous crime', and that any individual convicted of perjury is prohibited from holding any office of trust or profit in the Commonwealth. *See, e.g., Commonwealth v. Large,* 715 A.2d 1226, 1228 (Pa.Cmwlth.1998)(noting that perjury and false swearing under oath constitute 'infamous crimes' under Article II, Section 7 of the Pennsylvania State Constitution). As a final note, this Court has repeatedly found that "dishonesty on the part of an attorney establishes his unfitness to continue practicing law." *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 200, 425 A.2d 730, 733 (1981); *see also Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 84, 619 A.2d 1054, 1057 (1993).

Respondent's breach of the public trust, I would be inclined to disbar him prospectively. However, in recognition of his military service, his community involvement, his remorse, the character witnesses who spoke on his behalf, and his public service prior to his misconduct, I would instead disbar Respondent retroactive to the date of his temporary suspension on August 16, 1995.

Justice ZAPPALA joins in the dissenting statement.