**In the Matter of Joseph**

212

Disciplinary Board Docket no. 26 D.B. 1992, 79 D.B. 1993.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GENTILE, *Member,* April 13, 2005—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

# I. HISTORY OF PROCEEDINGS

On April 19, 2004, Marlene Evelyn Joseph filed a petition for reinstatement to the bar of the Supreme Court of Pennsylvania. Petitioner was disbarred on consent by order of the Supreme Court dated October 13, 1993. This is petitioner's second request for reinstatement. Her first petition for reinstatement was denied by order of the Supreme Court dated December 9, 2002.

A reinstatement hearing was held on August 18, 2004, before Hearing Committee 1.08 comprised of Chair John S. Summers, Esquire, and Members Margarete E. Choksi, Esquire and Patrick Charles Lord, Esquire. Petitioner was represented by Ellen C. Brotman, Esquire. Petitioner presented the testimony of six witnesses and testified on her own behalf.

The committee filed a report on January 18, 2005, finding that petitioner met her burden of proof as to the requirements for reinstatement and recommending that the petition for reinstatement be granted.

This matter was adjudicated by the Disciplinary Board at the meeting of March 16, 2005.

# II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner is Marlene Evelyn Joseph. She was born in 1940 and was admitted to practice law in Pennsylvania in 1982. Her address is 2306 Faunce Street, Philadelphia, PA 19152.

(2) By letter dated October 2, 1991, the Office of Disciplinary Counsel advised petitioner of a complaint filed

against her by a former client, Eugene N. Paprocky. No response was filed by petitioner to the D.B.-7 letter.

(3) Petitioner made $7,742 in unauthorized withdrawals from Mr. Paprocky's bank account, failed to respond to his demand for the return of these funds and converted these funds to her own personal use.

(4) By letter of May 21, 1992, Office of Disciplinary Counsel advised petitioner of a complaint made against her by her former client, Theresa Marie Wilson. No response was filed to this letter.

(5) Petitioner failed to obtain Ms. Wilson's consent to settle a claim arising out of a July 30, 1990 accident in which Ms. Wilson's minor son was injured. Petitioner failed to inform Ms. Wilson that her emotional distress claim had been settled in November 1990 and failed to advise Ms. Wilson that petitioner had received a $16,000 check to settle Ms. Wilson's emotional distress claim. Petitioner fraudulently endorsed Ms. Wilson's signature on the settlement check and then negotiated the check and converted the proceeds to her own benefit.

(6) Petitioner misled Ms. Wilson about the status of her emotional distress claim for over one year after the claim had been settled and did not inform Ms. Wilson about her misappropriation of the settlement proceeds until February 1992. Petitioner also did not comply with Ms. Wilson's requests to pay her the proceeds of the settlement or to send Ms. Wilson her file.

(7) By letter dated July 17, 1992, Office of Disciplinary Counsel advised petitioner of a complaint made against her by a former client, Edward Johnson. No response was filed by petitioner to the letter.

(8) Petitioner represented Mr. Johnson with respect to claims arising out of a September 2, 1990 accident in which he was injured. Petitioner failed to reduce the fee agreement to writing. When Mr. Johnson's case settled in May 1991, Keystone Insurance sent a check dated June 3, 1991 to petitioner for $20,000 made payable to Mr. Johnson and petitioner. Upon receipt of the check, petitioner requested that Mr. Johnson endorse the check and accompany her to Jefferson Bank to negotiate it. Petitioner advised Mr. Johnson that she would deposit the check in her escrow account and then make distribution within five or six weeks.

(9) Mr. Johnson accompanied petitioner to Jefferson Bank where she negotiated the check and gave Mr. Johnson $2,000 in cash. Petitioner paid Mr. Johnson the remainder of the funds as follows: a Jefferson Bank check for $5,000 on June 3, 1991, a Jefferson Bank check for $2,000 on June 3, 1991, a check for $3,500, a check for $3,000 and a check for $1,850 dated April 4, 1991.

(10) By letter dated July 8, 1993, Office of Disciplinary Counsel advised petitioner of a complaint made against her by Lois M. Dorety. No response was filed by petitioner to the letter.

(11) Petitioner was consulted by Cathy Dorety about representing her husband with respect to injuries he suffered in a car accident in May 1992. At that time, petitioner failed to inform the Doretys that she was on inactive status and was unable to represent them.

(12) Petitioner agreed to represent Mr. Dorety in defense of a suit filed against him in December 1992. The agreed fee was $2,500, to be paid in installments. Peti-

tioner received $1,300 in fees from Cathy and Lois Dorety in January 1993. Petitioner failed to prepare a written fee agreement and failed to take action to protect Mr. Dorety's interest in the pending case, resulting in a default judgment being entered against him. Petitioner also repeatedly failed to respond to Cathy Dorety's telephone calls to discuss the case.

(13) On May 26, 1993, petitioner spoke to Lois Dorety on the phone and misled her by advising that petitioner had referred the case to another attorney, had tried to contact the opposing attorney 10 or 15 times but he did not return her calls, that the opposing attorney was unethical and that petitioner would contact the Doretys in four or five days to update them on the status of the case. Petitioner thereafter failed to contact the Doretys and did not promptly refund the monies which she received, despite a written request by the Doretys.

(14) On June 1, 1992, an information was filed in the United States District Court for the Eastern District of Pennsylvania charging petitioner with one count of mail fraud and two counts of tax evasion.

(15) On June 2, 1992, petitioner entered a plea of guilty to all three counts in the information.

(16) With respect to the mail fraud offense charged in Count One, petitioner represented Byrdie Jackson in a personal injury action in 1987. The fee agreement between petitioner and Ms. Jackson stated that petitioner would receive 40 percent of any recovery from Metropolitan Life Insurance Company as her attorney's fee. On September 29, 1987, petitioner received a $15,000 check from Met Life on behalf of Ms. Jackson. Petitioner

fraudulently forged Ms. Jackson's signature on the check as well as on a release to Met Life. Petitioner then cashed the check, kept the $15,000 and never told Ms. Jackson of the settlement.

(17) With respect to the tax evasion offense charged in Counts Two and Three of the information, petitioner had tax returns for the years 1986 and 1989 prepared by her accountant based solely on the information that she provided to the accountant. The tax returns were false in that petitioner understated her income by approximately $76,000 for 1986, $102,000 for 1987, $81,000 for 1988 and $62,000 for 1989. Petitioner filed only the 1986 return. On April 19, 1991, petitioner filed an amended return for 1986 and delinquent returns for 1987, 1988 and 1989 wherein she reported her true income.

(18) Petitioner evaded taxes by not properly maintaining business bank accounts and by cashing numerous checks at check cashing agencies and at banks on which the checks were drawn. Petitioner understated her income to her accountant and falsified her expenses for the tax years 1986 through 1989. She also understated the amount she received from the sale of her house in 1987 by $30,000. While petitioner understated her income for four separate years, the information charged her with, and she pleaded guilty to, tax evasion with respect to her 1987 and 1988 tax returns. Petitioner's federal sentencing guidelines were calculated based upon all four years in which she admitted understating her income.

(19) On June 29, 1993, petitioner was sentenced by the Honorable Franklin S. Van Antwerpen, Judge of the District Court, to 366 days in prison and three years of

supervised release. She was ordered to continue to participate in Gamblers Anonymous and pay restitution to Ms. Jackson in the amount of $9,000 within five years after her release from prison. Full restitution was made to Ms. Jackson on February 10, 1994. Petitioner served her prison sentence at the federal prison in Lexington, Kentucky.

(20) Petitioner submitted a verified statement of resignation dated August 23, 1993, stating that she desired to resign from the bar of the Commonwealth based on her criminal convictions and four separate pending disciplinary complaints.

(21) On October 13, 1993, petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania.

(22) On January 7, 1994, petitioner filed a statement of compliance pursuant to Rule 217(e), Pa.R.D.E., certifying that she had complied with the applicable provision of the Rules of Disciplinary Enforcement regarding notification of her disbarment.

(23) As of July 14, 1999, petitioner satisfied all restitution obligations she owed to clients who filed claims with the Pennsylvania Lawyers Fund for Client Security.

(24) Petitioner settled her tax obligation to the Internal Revenue Service for the years 1986 to 1989 and 1995 to 1999 through an offer in compromise that was accepted on September 20, 2000.

(25) During the time frame of petitioner's professional misconduct, her mental condition was seriously disturbed and her judgment was impaired due to her addiction to gambling.

(26) Petitioner received outpatient psychotherapy focusing on her compulsive gambling from Charles V. Giannasio M.D., a board-certified psychiatrist, from November 1999 to date.

(27) Dr. Giannasio testified in support of petitioner's recovery at her reinstatement hearing.

(28) Dr. Giannasio identified a causal connection between petitioner's gambling and her theft of money in order to support the gambling. He testified that petitioner's ongoing recovery has been integrated into her life. She attends Gamblers Anonymous meetings regularly and is involved in the Council of Compulsive Gambling. Her prognosis for recovery is very good.

(29) Petitioner's current sponsor at Gamblers Anonymous is James Pappas, who testified in support of her recovery at the reinstatement hearing.

(30) Mr. Pappas is the executive director of the Council of Compulsive Gambling of Pennsylvania.

(31) Mr. Pappas has known petitioner since 1997 and has had almost daily contact with her for the duration of that time.

(32) Mr. Pappas describes petitioner's recovery as excellent.

(33) Several other character witnesses testified on behalf of petitioner, including her son and daughter-in-law, who are both attorneys licensed in Pennsylvania.

(34) These witnesses all verified that petitioner is in recovery from gambling.

(35) Petitioner worked at a variety of jobs subsequent to her release from prison. She worked as an administrative assistant for About Time Inc., from January 1995

through September 1997. She left when the company went into bankruptcy.

(36) Petitioner then held a series of jobs between 1997 and 2001, none lasting more than one year.

(37) Petitioner had difficulty finding work as a disbarred attorney.

(38) During this time petitioner cared for her ill parents, both of whom died in 2000.

(39) Beginning in February 2003, petitioner began work as a part-time administrative assistant in her son's law office.

(40) Her duties are generally administrative and clerical in nature. She prepares letters, answers the telephone, receives client information, receives payments from clients and issues receipt for payments.

(41) In March 2004, petitioner began working part-time for Sabatina and Associates as a paralegal. In that capacity petitioner does legal research and prepares legal correspondence.

(42) John Sabatina, Esquire, testified at the reinstatement hearing that petitioner's quality of work is excellent and that if she was reinstated he would hire her without question.

(43) Petitioner expressed sincere remorse and an understanding that her actions hurt many people.

## III. CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of her petition for reinstatement.

(2) Petitioner has demonstrated by clear and convincing evidence that she possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner has demonstrated that her resumption of the practice of law within the Commonwealth will be neither detrimental to the integrity and standing of the bar or administration of justice, nor subversive of the public interest.

## IV. DISCUSSION

Petitioner's request for reinstatement to the bar following disbarment is initially governed by the standard set forth by the Supreme Court of Pennsylvania in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). The *Keller* opinion articulates a threshold question which must be addressed before the requirements of Pa.R.D.E. 218(c)(3)(i) are considered. This threshold inquiry is whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon the integrity and standing of the bar or the administration of justice, nor be subversive of the public interest. *Keller* thus requires a determination that the original misconduct was not so offensive as to preclude reinstatement.

In the instant matter, petitioner was convicted of mail fraud and tax evasion and has admitted to committing various ethical violations involving conversion of client funds. The board and the Supreme Court have previously found that such misconduct is not so egregious as to prohibit reinstatement. *In the Matter of Greenberg,* 561 Pa.

154, 749 A.2d 434 (2000); *In the Matter of Verlin,* 557 Pa. 47, 731 A.2d 600 (1999), and *In the Matter of Costigan,* 541 Pa. 459, 664 A.2d 518 (1995). Accordingly, the board is satisfied that petitioner's misconduct, while extremely serious, is not so offensive as to preclude reinstatement.

Having concluded that the nature of petitioner's misconduct will not preclude reinstatement, the board must now determine whether petitioner has met her burden of proving by clear and convincing evidence that her resumption of the practice of law at this time would not have a detrimental impact on the integrity and standing of the bar, the administration of justice or the public interest, and that she has the moral qualifications, competency and learning in the law required for admission to practice law in Pennsylvania. Pa.R.D.E. 218(c)(3)(i). In order to make this determination, the board must consider the amount of time that has passed since petitioner was disbarred as well as her efforts at rehabilitation. *In the Matter of Verlin,* 557 Pa. 47, 731 A.2d 600 (1999).

As noted above, this is petitioner's second request for reinstatement to the bar. In considering petitioner's first petition for reinstatement, the board and the court found that petitioner did not demonstrate full and complete rehabilitative efforts. Specifically, the board, in its report of September 11, 2002, found that petitioner made no effort at that time to verify payment of restitution to her client Eugene Paprocky. The board was also concerned about petitioner's lack of consistent and steady employment.

Review of the instant record demonstrates that petitioner has addressed these specific concerns and met her

burden of proof as to a qualitative rehabilitation period. In March 2003, petitioner gave her counsel a check for $8,400 to be placed in escrow for Mr. Paprocky. An escrow account is currently being maintained by the law firm of Carroll & Brotman. Between June 2003 and June 2004, petitioner, through her counsel, attempted to contact Mr. Paprocky nine times to advise him of the escrow account. Office of Disciplinary Counsel also tried to reach Mr. Paprocky, without success. The board is satisfied with petitioner's efforts to contact Mr. Paprocky concerning his funds and believe these efforts are sufficient to overcome the concerns raised in 2002.

The second area of concern expressed by the board in its prior report was petitioner's inconsistent work history since her release from prison. Her work experience since the denial of the first reinstatement petition has been significant, considering her personal circumstances. Petitioner works at her son's law office and for Sabatina and Associates as a paralegal. Mr. Sabatina expressed satisfaction with petitioner's work and indicated that he is willing to hire her after she is reinstated. By all accounts she is a valuable employee who is trusted to carry out important tasks for her employers.

Petitioner has been disbarred since 1993. She has done everything in her power at this time to right the wrongs she inflicted on others, and to take charge of her own life and control her gambling addiction. She expressed sincere remorse and comprehends the gravity of her misconduct. Petitioner has fulfilled her Continuing Legal Education requirements and is gainfully employed as a paralegal. Petitioner provided the testimony of character

witnesses who attested to her recovery from a gambling addiction and who support her re-admission without hesitation. By all accounts, petitioner has met her burden of proof and is ready for reinstatement to the bar of the Supreme Court of Pennsylvania.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, Marlene Evelyn Joseph, be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Curran did not participate in the matter.

Board Members McLaughlin, Brown, Pietragallo and Nordenberg did not participate in the March 16, 2005 adjudication.

## ORDER

And now, July 15, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated April 13, 2005, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.