**In re Patete Petition for Reinstatement**

416

Disciplinary Board Docket no. 99 D.B. 2001.

NASATIR, *Member,* October 21, 2009—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme

Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

By order of the Supreme Court of Pennsylvania dated February 8, 2002, Anthony Richard Patete Jr. was disbarred on consent from the practice of law. Mr. Patete filed a petition for reinstatement on May 19, 2008. Office of Disciplinary Counsel filed a response to petition for reinstatement on August 4, 2008 and stated its concerns about certain issues.

A reinstatement hearing was held on October 31, 2008 and December 19, 2008, before a District II Hearing Committee comprised of Chair Cathy A. Wilson, Esquire, and Members Ethan N. Halberstadt, Esquire,[1] and John P. Elliott, Esquire. Petitioner appeared pro se. In addition to his own testimony, petitioner offered the testimony of six witnesses. Office of Disciplinary Counsel offered four witnesses.

Following the submission of briefs by the parties, the Hearing Committee filed a report on May 8, 2009 and recommended that the petition for reinstatement be denied.

Petitioner filed a brief on exceptions on May 29, 2009 and requested oral argument before the Disciplinary Board.

---

1. Sadly, on April 28, 2009, Member Ethan Halberstadt died. This was after the Hearing Committee heard testimony on two separate dates, but before the issuance of its report. Mr. Halberstadt did not participate in the writing or otherwise endorse the contents of the report.

Office of Disciplinary Counsel filed a brief opposing exceptions on June 15, 2009.

Oral argument was held before a three-member panel of the Disciplinary Board on July 1, 2009.

This matter was adjudicated by the Disciplinary Board on July 18, 2009.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner is Anthony Richard Patete Jr. He was born in 1961 and was admitted to the practice of law in Pennsylvania in 1986. He currently resides in Florida. Petitioner is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(2) On February 8, 2002, petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania.

(3) The basis for petitioner's disbarment was his misuse, misappropriation, commingling and conversion of funds in excess of $40,000 from the estate of Julia Mascantonio; misuse, misappropriation, commingling and conversion in excess of $133,000 from the estate of Mary Dunlap; and his violation of a Supreme Court order by concealing evidence of his conversions in the Dunlap estate when he failed to reveal the existence of the estate account in response to a validly issued subpoena.

(4) Subsequent to petitioner's disbarment, in the summer of 2002 he and his family relocated to Florida.

(5) For approximately two years after the move, petitioner stated in his reinstatement questionnaire and in his

testimony at the hearing that he was unemployed and a stay-at-home father for his two minor sons.

(6) Petitioner's tax returns reveal that for each and every year that he has resided in Florida, he has earned income as a "legal consultant."

(7) From 2004 until the time of the hearing, petitioner has been employed as a faculty member at Keiser University in Sarasota, Florida. Petitioner teaches paralegal studies, including ethics.

(8) Petitioner has not divulged his disbarred status to Keiser University, as he claims he was never asked.

(9) No witnesses associated with Keiser University, other than petitioner, testified at the reinstatement hearing.

(10) Petitioner had filed a petition for reinstatement prior to the instant petition, but withdrew it because he learned that the Pennsylvania Lawyers Fund for Client Security had awarded a claimant, Charles Doyle, the sum of $25,000, and petitioner was not eligible for reinstatement until the fund received reimbursement for the award.

(11) Petitioner requested a reconsideration of the award, and after a hearing held on January 25, 2008, the board for the fund reduced petitioner's obligation from $25,000 to $10,000, although the board did not reduce Mr. Doyle's award.

(12) On or around April 24, 2008, petitioner repaid the fund $11,997.26 representing payment of the claim plus interest.

(13) Charles Doyle, the fund claimant, appeared at the reinstatement hearing and testified concerning petitioner's representation.

(14) In May of 2001, Mr. Doyle retained respondent to represent his son, Michael Doyle, in connection with criminal charges pending against Michael in Delaware County, Pennsylvania.

(15) Mr. Doyle initially paid petitioner $4,500 in May 2001 to cover the costs of Michael's preliminary hearing and bail hearing.

(16) Petitioner sent Mr. Doyle a letter dated July 20, 2001 regarding his fees.

(17) An emergency temporary license suspension was entered against petitioner on July 19, 2001, the day before petitioner provided Mr. Doyle with the fee agreement. The suspension was not lifted until August 21, 2001.

(18) Petitioner did not inform Mr. Doyle of the temporary suspension.

(19) Mr. Doyle would not have paid petitioner to take his son's case had he known of the temporary suspension.

(20) Petitioner signed a resignation statement from the bar of Pennsylvania on January 15, 2002.

(21) By letter dated January 16, 2002, the day after he signed his resignation statement, petitioner sent Mr. Doyle another fee agreement for the purpose of representing Michael in connection with a New Jersey criminal matter.

(22) Petitioner was not licensed to practice law in New Jersey at the time he provided Mr. Doyle with the fee

agreement and Mr. Doyle understood that New Jersey counsel would need to be engaged. Nonetheless, Mr. Doyle paid petitioner for the representation with the understanding that fee monies would be paid to the New Jersey lawyer.

(23) Mr. Doyle identified two cancelled checks, one dated January 29, 2002 for $2,500 and a second dated March 2, 2002 for $2,500 that he paid directly to petitioner for the New Jersey matter.

(24) Petitioner accepted a fee from Mr. Doyle nearly one month after the Supreme Court entered its order providing for petitioner's disbarment.

(25) Petitioner failed to inform Mr. Doyle in writing of his disbarment.

(26) Petitioner failed to inform Mr. Doyle in writing that he could no longer represent Michael in his criminal matter in Pennsylvania, which was still pending and had yet to go to trial as of the date petitioner was disbarred.

(27) In June 2002, Mr. Doyle learned for the first time from Robert Meingossner, Esquire, that petitioner had been disbarred and could no longer represent Michael. Mr. Meingossner is the attorney who had handled Michael Doyle's New Jersey matter and agreed to temporarily handle the Pennsylvania matter.

(28) Mr. Meingossner testified at the reinstatement hearing.

(29) In the summer of 2001, Mr. Meingossner became a tenant in petitioner's Erdenheim office, after petitioner offered to rent him space, telling Mr. Meingossner that he was considering retiring and moving to Florida.

(30) Shortly after moving into the office in June of 2001, Mr. Meingossner became aware that disciplinary action had been instituted against petitioner.

(31) Mr. Meingossner was still renting space in petitioner's office at the time of petitioner's disbarment.

(32) Mr. Meingossner observed that petitioner's attitude at the time of his disbarment with respect to his obligations was one of defiance: "the exact word that I recall him saying was, 'f**k the board. I don't have any clients to notify. I've transferred them all.'"(N.T. 122.)

(33) Petitioner acknowledged that although he signed a certificate of compliance with the notice requirements, he did not send notices to any clients, as he contended that they had all been transferred to Mr. Meingossner.

(34) With respect to those files that Mr. Meingossner received from petitioner, he had the opportunity to review them and saw no written notification of petitioner's disbarment to any client.

(35) Mr. Meingossner recalled conversations with one or more clients who did not understand why their files had been transferred to him and who had no knowledge or understanding of what had happened to petitioner.

(36) Petitioner transferred the files to Mr. Meingossner without prior notice to the clients or first obtaining any client authority for the transfer; after the transfer Mr. Meingossner had to explain to clients what his roll would be.

(37) With respect to the Michael Doyle matter, Mr. Meingossner testified that he was not paid to represent

Michael in either the New Jersey or the Pennsylvania matter in 2002, although Charles Doyle had been led to believe by petitioner that petitioner would pay Mr. Meingossner from the fees Mr. Doyle has given to petitioner.

(38) Mr. Meingossner testified that in his opinion, and based on the time spent working with and for petitioner; he was not an honest person and not fit to be readmitted.

(39) Mr. Meingossner provided credible testimony.

(40) Petitioner offered the testimony of Larry Watson, a paralegal who worked in petitioner's law office from approximately 1999 until the time of petitioner's disbarment.

(41) Mr. Watson testified that he had prepared letters advising both Michael Doyle and Charles Doyle of petitioner's disbarment.

(42) On cross-examination, Mr. Watson admitted to pleading guilty to multiple crimes involving crimen falsi, including: tampering with public records and unsworn falsifications to authorities in Lancaster County in 1999; theft by deception in Lancaster County in 1999; theft of leased property in Delaware County in 1999; and in New Jersey, for passing false checks.

(43) Mr. Watson lied on the stand to the Hearing Committee, initially denying that he had presented false identification and falsely claimed to be a special investigator with the Commonwealth in connection with one of his arrests.

(44) Mr. Watson did not admit the truth of that allegation until confronted with the police criminal complaint in the matter.

(45) The Hearing Committee did not find the testimony regarding notices of disbarment sent to petitioner's clients to be credible.

(46) Petitioner presented five character witnesses. The witnesses included Edward J. Morris, Esquire, an attorney who rented office space from petitioner; Kevin Staas, Esquire, a Florida attorney with whom petitioner owns rental property and for whom he performs paralegal services; and three personal friends, Karen Gagliardi, Gregory Gagliardi and Fred Santilli.

(47) None of the character witnesses were aware of the facts leading to petitioner's disbarment. Some of them, including Mr. Morris, testified that petitioner claimed he could not disclose the underlying facts on the advice of counsel, or due to confidentiality rules.

(48) Petitioner testified on his own behalf.

(49) Petitioner's explanation for his conversion of client funds was that it occurred at a time when he was defending himself in two civil lawsuits, one of which his malpractice carrier initially refused to defend, and the other which was dismissed. He used the funds to run his law practice and defend himself in those actions.

(50) After his disbarment and move to Florida, in 2004 petitioner obtained employment with Keiser University in Sarasota. He was hired as an adjunct faculty member and was a paralegal instructor. He taught all of the law

classes in the paralegal program and eventually became a certified paralegal.

(51) Petitioner's reason for seeking reinstatement is that he needs to be a member in good standing of the Pennsylvania Bar in order to continue to be a member of the faculty at Keiser University, due to new accreditation requirements.

(52) In addition to his employment at Keiser University, petitioner performed paralegal work for Kevin Staas, a Florida licensed attorney, including preparing briefs, legal memoranda and legal research.

(53) Petitioner does not intend to return to Pennsylvania to practice law, as the move would be too disruptive for his family.

(54) Petitioner completed his continuing legal education course requirements for reinstatement.

(55) Petitioner expressed remorse for his disbarment, but did not appear remorseful regarding the conduct which led to his disbarment, or the conduct following his disbarment, including but not limited to his failure to provide notice of disbarment to his clients.

(56) Petitioner's reinstatement questionnaire contained errors and omissions.

(57) Petitioner stated on the questionnaire, as well as in his testimony, that he made restitution in full within 60 days along with interest. (Question 5(c), N.T. 39.)

(58) Petitioner's own exhibits demonstrate that his restitution payments were made on two dates, and those dates were more than 60 days apart.

(59) When questioned about the discrepancy, petitioner refused to admit that his repeated statement about restitution was not accurate and continued to insist that restitution was made within 60 days.

(60) Petitioner claimed in his personal statement on the reinstatement questionnaire that it was not necessary for any client to file a malpractice suit against him to obtain restitution of converted funds. (Questionnaire exhibit B.)

(61) In petitioner's 2002 tax return, he characterized the amount of restitution paid to the Dunlap estate as a "malpractice settlement" of $144,000.

(62) On cross-examination petitioner acknowledged that the Dunlap estate had filed a malpractice case, and claimed the restitution payment was property characterized as both restitution and malpractice. (N.T. 12/19/08 16-17.)

(63) Petitioner answered affirmatively to question 6(a), which asked whether he filed copies of non-litigation notices to clients with the Secretary of the Disciplinary Board, and also stated that all required notices were timely filed; but acknowledged on cross-examination that he did not provide copies of non-litigation notices to clients. (N.T. 12/19/08 17-20.)

(64) Petitioner left question 6(b) blank, which asked about notice to litigation clients.

(65) Petitioner answered "no" to question 7(a) asking whether discipline had ever been imposed by another state or federal agency. The docket from the Eastern District of Pennsylvania reflects reciprocal discipline,

with notices going to petitioner in May and July of 2002. Petitioner claims he did not recall receiving any notice.

(66) In response to question 10(c) asking if tax returns had been timely filed, petitioner identified only his 2005 return as late, and failed to identify his 2002 return.

(67) Petitioner failed to identify his legal consulting business in response to question 11(a) which asked for a chronological list of "occupations, jobs, business associations or other ventures of any kind whatsoever . . . ."

(68) On cross-examination, petitioner took the position that he had disclosed the legal consulting business by identifying "Cengage Learning", which is a publication company, as a source of income. Petitioner contradicted his own testimony by conceding that he had earned no income from Cengage until 2007; but his income tax returns reflect income for the legal consulting business every year from 2003.

(69) Petitioner produced no supporting documentation for the years 2003 or 2004 which would demonstrate who paid him for work he did as a "legal consultant," how much he was paid or what work he performed, although he did testify that $2,400 of the income was paid by his brother.

(70) Petitioner admitted performing work for his brother, a doctor, which he described as finding the applicable law and handing a copy to his brother, for which he has been paid a salary of $2,400 annually. Petitioner denied this was the practice of law, but conceded that it may be reflected in a portion of the income which he described on his tax returns as "legal consulting."

(71) Office of Disciplinary Counsel opposes reinstatement.

## III. CONCLUSIONS OF LAW

(1) Petitioner's conduct is not so egregious as to preclude reinstatement to the bar. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

(2) Petitioner failed to establish by clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law necessary to practice law in Pennsylvania. Pa.R.D.E. 218(c)(3)

(3) Petitioner's resumption of the practice of law would be detrimental to the integrity and standing of the bar and administration of justice, and subversive of the interests of the public. Pa.R.D.E. 218(c)(3)

## IV. DISCUSSION

Petitioner seeks readmission to the bar of the Supreme Court of Pennsylvania following his disbarment for misappropriation of client funds and other dishonest conduct. For the reasons set forth below, the board concludes that petitioner has failed to meet his burden.

Petitioner's request for reinstatement to the bar after disbarment is initially governed by the standard set forth in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 508 A.2d 872 (1986). As a threshold matter, the board must determine whether petitioner has demonstrated that his breach of trust was not so egregious that it precludes him from reinstatement.

Petitioner acknowledged misappropriating funds belonging to two estates, He took funds in the amount of

$40,000 from the Mascantonio estate and $133,000 from the Dunlap estate. Additionally, petitioner failed to reveal the existence of an estate account in response to a validly issued Pennsylvania Supreme Court subpoena. Petitioner's acts of misconduct involved a clear pattern of dishonesty to his clients.

While petitioner's misconduct is very serious, the court has repeatedly declined to find that conversion and dishonesty are acts sufficiently egregious to bar reinstatement. *In re Perrone,* 565 Pa. 563, 777 A.2d 413 (2001) (disbarred attorney's misconduct in filing false and misleading fee petitions obtaining payment for legal services purportedly provided to indigent clients was not so deplorable as to preclude reinstatement); *In re Greenberg,* 561 Pa. 154, 749 A.2d 434 (2000) (disbarred attorney criminally convicted of fraud, which included perpetrating fraud on the bankruptcy court, not forever precluded from reinstatement); *In re Costigan,* 541 Pa. 459, 664 A.2d 518 (1995) (disbarred attorney criminally convicted in connection with his handling of an estate where he concealed assets from the rightful heir was not barred from reinstatement). Upon review of the underlying offenses and the case law, the board concludes that the misconduct is not so egregious as to preclude petitioner from reinstatement.

The board must next determine whether petitioner has met his burden of proving by clear and convincing evidence that he meets the reinstatement requirements set forth by Pa.R.D.E. 218(c)(3), including that he presently has the moral qualifications, competency and learning in the law required for admission to practice law in the Commonwealth. Here, petitioner was unable to dem-

onstrate that he is qualified to resume the practice of law.

Following his disbarment, petitioner engaged in dishonest acts. He signed his resignation statement on January 15, 2002. Yet the following day he sent a fee agreement to Charles Doyle for the purpose of representing Michael Doyle in a New Jersey criminal matter. Mr. Doyle sent payment of the fee by check to petitioner, who accepted the payment even though he was already disbarred. Petitioner believes he did nothing wrong.

Petitioner failed to provide notice to his clients of his disbarment, pursuant to the provisions of Pa.R.D.E. 217. On the reinstatement questionnaire, petitioner either failed to answer questions regarding notice provided his clients, or answered questions falsely. Petitioner offered the testimony of his former paralegal, Larry Watson, regarding notice that petitioner provided his clients. The Hearing Committee found that the testimony was not credible. The board concurs with this finding. Petitioner's own testimony was not reliable on this issue. He claimed that he had no duty to notify clients as they had been transferred to other lawyers. According to the credible testimony of Robert Meingossner, clients who were transferred to him from petitioner were confused as to what happened to petitioner and the reason for the transfer.

Petitioner by his own admission has not notified his current employer, Keiser University, of his disbarred status. While he claims that he was never asked, petitioner has an affirmative obligation to inform "other persons with whom he may have professional contacts

under circumstances where there is a reasonable probability those persons may infer he remains an attorney in good standing." Pa.R.D.E. 217(c)(3). This obligation continues for as long as petitioner is disbarred. Petitioner's status as a paralegal instructor charged with teaching all law classes at Keiser involves work in a field that is law-related. Many of those he is in contact with would hold a reasonable expectation that petitioner is a lawyer in good standing.

Petitioner's character witnesses did not aid his case. Uniformly, they had no understanding of the facts leading to petitioner's disbarment and were unable to shed any positive light on petitioner's character.

Petitioner's reinstatement questionnaire contained errors and omissions. Many times such errors will not prevent an attorney's reinstatement if the errors are clearly explained; however, petitioner's explanations for his errors and omission were not credible or convincing. Among other things, petitioner failed to disclose that he has a legal consulting business, although his tax returns reflected income earned and deductions taken in connection with such a business. Petitioner did not appear to understand that performing legal research for his brother, a doctor, constituted the practice of law. Petitioner failed to report his reciprocal disbarment in the Eastern District of Pennsylvania, and he stated on his questionnaire that he made restitution to clients within 60 days, which was not true. Given the importance of this reinstatement proceeding, petitioner's carelessness, even if viewed in the light most favorable to him, is not excusable and only compounds his overall appearance of incompetence and lack of fitness.

The board recommends that the petition for reinstatement be denied.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the petition for reinstatement filed by petitioner, Anthony Richard Patete Jr. be denied.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

## ORDER

And now, December 29, 2009, upon consideration of the report and recommendations of the Disciplinary Board dated October 21, 2009, the petition for reinstatement is denied.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.