**Office of Disciplinary Counsel v. Pazuhanich**

Disciplinary Docket no. 15 D.B. 2005.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

CURRAN, *Member,* August 11, 2006—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On February 25, 2005, the Supreme Court of Pennsylvania entered an order placing Mark Peter Pazuhanich on temporary suspension and referring the matter to the Disciplinary Board. Office of Disciplinary Counsel filed a petition for discipline against respondent on May 3, 2005, charging him with professional misconduct arising out of his criminal conviction of two counts of indecent assault, one count of endangering the welfare of children, one count of corruption of minors, and the summary offense of public drunkenness. Respondent filed an answer to petition for discipline on June 7, 2005.

A disciplinary hearing was held on August 30, 2005 before a District III Hearing Committee comprised of Chair Samuel Leach Andes, Esquire, and Members John H. Reed, Esquire, and Jeffrey P. Edmonds, Esquire. Respondent was represented by Marshall E. Anders, Esquire.

Following the submission of briefs by the parties, the Hearing Committee filed a report on January 20, 2006, finding that respondent engaged in professional misconduct and recommending that he be disbarred.

Respondent filed a brief on exceptions and request for oral argument on February 13, 2006.

Petitioner filed a brief opposing exceptions on March 1, 2006.

Oral argument was held on March 24, 2006 before a three-member panel of the Disciplinary Board chaired by Robert E.J. Curran, Esquire, with Marc S. Raspanti, Esquire and Francis X. O'Connor, Esquire.

This matter was adjudicated by the Disciplinary Board at the meeting on March 29, 2006.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent, Mark Peter Pazuhanich, was born in 1956 and was admitted to practice law in the Commonwealth of Pennsylvania in 1981. He is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no prior history of discipline.

(4) In 1985 respondent moved to Stroudsburg, Pennsylvania, where he was employed as an associate with a local firm, and eventually became a partner at that firm.

(5) After working for several years as an assistant district attorney and prosecuting criminal cases, in 1995 respondent was elected to the office of district attorney of Monroe County.

(6) After serving two terms as district attorney, respondent was elected as a judge in the Court of Common Pleas of Monroe County in November 2003. He was scheduled to assume the office of judge in January 2004.

(7) On November 29, 2003, respondent attended a music concert at the F.M. Kirby Center in Wilkes-Barre, Pennsylvania with his 10-year-old daughter. Shortly before arriving at the concert, while driving his car with his daughter present, respondent drank approximately three to five ounces of vodka, and took Flexoral, a muscle relaxant.

(8) While at the concert, in the presence of several adult witnesses, respondent fondled his daughter, touching intimate parts of her body.

(9) Following the concert, respondent was detained and questioned by the Wilkes-Barre police and eventually arrested and charged with two counts of indecent assault, one count of endangering the welfare of children, and one count of corruption of minors, and the summary offense of public drunkenness.

(10) In December 2003 respondent and petitioner filed a joint petition requesting that respondent be transferred to inactive status by the Supreme Court. By an order dated December 22, 2003, the Supreme Court transferred respondent to inactive status in response to that petition.

(11) Respondent was sworn in by a notary public as judge of the Court of Common Pleas of Monroe County on January 5, 2004. He was subsequently placed on administrative leave.

(12) On July 12, 2004, respondent pleaded no contest to all of the charges and was sentenced to an aggregate sentence of 10 years probation and was directed to comply with and register pursuant to "Megan's Law II." (42 Pa.C.S. §9791 et seq.) Respondent's sentence included other terms and conditions, including a provision that he have no contact with his minor daughter except under court supervision, that he remain in substance abuse treatment, and that he not utilize intoxicants or drugs.

(13) Respondent's probation is currently supervised by Luzerne County.

(14) By order dated October 1, 2004, the Court of Judicial Discipline removed respondent from his position as a judge of the court of common pleas and ordered that respondent "shall be ineligible to hold judicial office in the future."

(15) By an order dated February 25, 2005, the Supreme Court of Pennsylvania temporarily suspended respondent from the practice of law on the basis of his criminal conviction.

(16) Respondent's arrest and conviction generated significant news coverage in the Wilkes-Barre and Stroudsburg areas as well as throughout portions of the Commonwealth of Pennsylvania.

(17) Approximately 15 years prior to the incident which led to his criminal prosecution in this matter, re-

spondent had problems with alcohol abuse. He sought and received treatment in 1993, overcame those problems and was free of problems resulting from alcohol abuse for approximately seven years.

(18) Respondent resumed occasional consumption of alcohol several months prior to the incident in question.

(19) Respondent admitted that he drank vodka the night of the concert while in his vehicle driving his daughter to the concert. Respondent denied he was intoxicated at the time of the incident.

(20) After the incident respondent committed himself to an inpatient drug and alcohol facility in Reading, Pennsylvania. He has not used alcohol since that time.

(21) Respondent receives psychological counseling once a month. His doctors have provided documentation that he is unable to work at this time due to severe depression and bi-polar disorder.

(22) Respondent takes Lexipro, an antidepressant; Lamictal, a mood stabilizer; and Seroquel, which also stabilizes his thought process.

(23) Respondent has not seen his daughter since the incident in November 2003. He has made little or no effort to contact the child or to obtain supervised visitation with her.

(24) Respondent has not been employed since July 2004. His finances are in disarray and he is not certain he can maintain his home. At the time of the hearing, respondent was receiving public assistance from the

Commonwealth of Pennsylvania and had applied for Social Security disability payments.

(25) On September 21, 2004, respondent filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. His debts were discharged on March 21, 2005.

(26) Respondent did not admit that he engaged in the conduct for which he was convicted. Respondent states he may have recklessly touched his daughter when he was tickling her but not for sexual gratification. (N.T. 154, 176, 179.)

(27) Respondent has doubts whether he actually touched his daughter at all in intimate areas. (N.T. 176.)

(28) Respondent does not attribute the incident to a lapse of his judgment due to alcohol and the muscle relaxant. He believes it was an accident. (N.T. 177, 178, 179.)

(29) Respondent feels great anguish over what happened to his daughter, but does not feel he can admit he was wrong and express remorse for something he believes he did not do. (N.T. 177, 178.)

(30) Respondent indicated he entered a plea of nolo contendere to the charges because he thought it was the shortest path to rebuild a relationship with his daughter. (N.T. 145.)

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) Pa.R.D.E. 203(b)(1)—Conviction of a serious crime shall constitute an independent basis for discipline.

(2) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer.

## IV. DISCUSSION

Respondent is charged with professional misconduct arising out of his conviction of the crimes of indecent assault, endangering the welfare of children, corruption of minors and the summary offense of public drunkenness. As with all criminal conviction matters, the sole issue to be resolved is the extent of discipline to be recommended. *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982).

Respondent engaged in the inappropriate touching of his 10-year-old daughter's intimate body parts, while at a music concert. Respondent's fondling was observed by patrons as well as security guards at the concert. Respondent was observed to be intoxicated, and he later admitted that he drank three to five ounces of vodka on the way to the concert and simultaneously took a muscle relaxant. Respondent entered a plea of no contest to the charges against him in July 2004 and received a sentence of 10 years of probation and was directed to comply with and register pursuant to "Megan's Law II", 42 Pa.C.S. §9791, et seq. Respondent is not permitted contact with his daughter except under court approved supervision. At the time of the incident, respondent was the district

attorney of Monroe County and judge-elect of the Court of Common Pleas of Monroe County. After he was criminally charged, respondent still attempted to fulfill his judicial office after being sworn in by a notary public. He presided over a few legal proceedings until he was forced to take administrative leave.

This is a disturbing matter on many levels. At the time of the incident, respondent had a reputation as an astute and competent lawyer and prosecutor who had just been elected to the broad and powerful responsibility of judicial office. In a very short period of time, respondent destroyed his reputation and ruined his life as he knew it. He is currently serving a 10-year sentence of probation. He was placed on administrative leave from his judgeship and later was barred from judicial office for life. He was placed on temporary suspension from the practice of law by the Supreme Court in February 2005. Respondent has been unemployed since July 2004, has declared bankruptcy, and is seeking assistance and Social Security disability. He has not seen his daughter since November 2003, nor has he even talked to her or communicated through the mail. There is no doubt that respondent has suffered enormous personal loss.

Respondent, while admitting that what he did was inappropriate, did not admit at the hearing that he touched his daughter in a sexual manner, even though he entered a plea of nolo contendere to the criminal charges after being advised that such would be treated as an admission of guilt. Respondent believes it was either reckless touching or an accident that happened when he was tickling her, and at one point in his testimony he indicated, somewhat inconsistently, that he did not remember touching

his daughter in her private areas, and that he did not believe that he did so. Respondent would not attribute his conduct to a loss of judgment due to alcohol and prescription pill use. He did not express remorse for the crimes of which he was convicted, and plainly stated his intention not to do so, but rather expressed anguish for the pain his daughter experienced. He did not acknowledge any harm done to the public perception of the judicial system and the legal profession due to his position as district attorney and judge-elect.

The record briefly indicated that respondent sought mental health counseling subsequent to the incident, and is taking several medications. There was also testimony of respondent's alcohol use and treatment. Respondent did not produce expert testimony on these issues. There is clearly not sufficient evidence that would allow the board to find a causal connection between the mental health issues and the misconduct. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989).

Any time an attorney engages in criminal conduct a cloud is cast on the reputation of the legal profession and the court system. Herein, several facts combine to render this case more egregious than usual. Respondent, as a district attorney and judge-elect, sexually fondled his 10-year-old daughter. This conduct is outside the realm of any acceptable standards of professional or social behavior. That the criminal conduct did not involve a client or the practice of law is of no moment in the board's consideration of discipline. That respondent was the district attorney and judge-elect is a critical fact in the board's analysis. *Office of Disciplinary Counsel v. Preate,* 557 Pa. 4, 731 A.2d 129 (1999). Respondent held the

most powerful law enforcement position in his county. He was a public figure subject to public scrutiny when he committed the wrongful acts. Respondent did not express remorse for his actions, but rightly acknowledged that harm occurred to the victim, his daughter. He does not appear to accept or comprehend that he harmed the public, the people who put trust in him and elected him.

Respondent's acts warrant severe discipline; respondent's request for a five-year suspension is an acknowledgement of the seriousness of the matter. After careful consideration of the Hearing Committee Report and the parties' positions at oral argument, the board is persuaded that disbarment is appropriate, retroactive to the date of temporary suspension. In other cases of criminal conviction for inappropriate sexual touching by an attorney, suspension has been imposed. In *Office of Disciplinary Counsel v. Sangiamo,* 35 D.B. 2001, 652 Disciplinary Docket no. 3 (Pa. July 25, 2002), the criminal conviction of one count of corrupting the morals of a minor resulted from respondent's inappropriate behavior with a 16-year-old intern during a visit to her home. Respondent was sentenced to imprisonment of two to 23 months. He was suspended by the Supreme Court for 20 months. There are several key differences between *Sangiamo* and the instant case. The victim was 16 years old and the record was clear that she initiated the touching, although that did not justify Mr. Sangiamo's conduct. Also, Mr. Sangiamo was not the district attorney or judge-elect of his county at the time of the commission of the criminal activity. In the matter of *In re Anonymous No. 77 D.B. 97,* 49 D.&C.4th 119 (2000), the attorney

was convicted of one count of indecent assault after he fondled a female client in his law office. This attorney was sentenced to two years of probation. The board recommended, and the Supreme Court imposed, a suspension of three years, retroactive to the temporary suspension. In the matter of *In re Anonymous 127 D.B. 94,* 64 Disciplinary Docket no. 3 (June 2, 1998), the attorney was suspended for five years retroactive to his temporary suspension following his conviction of three counts of indecent assault. This attorney was sentenced to imprisonment of three to 18 months and two years of probation. The indecent assaults were perpetrated on three different female clients who were asked by the attorney to come to his office in order to review legal matters. Again, neither of the attorneys in the above cited cases were the district attorney of their respective counties nor were they about to ascend the bench.

A primary function of the Disciplinary Board is to protect the public and maintain public confidence in the integrity of the legal system by removing such attorneys who pose a danger to the public and who by their status as a licensed attorney erode the integrity of the legal system. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). Respondent's egregious and outrageous misconduct while serving as an elected district attorney proves he is not fit to practice law in the Commonwealth.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Mark Peter

Pazuhanich, be disbarred from the practice of law retroactive to February 25, 2005.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Raspanti, Teti, Gephart, O'Connor and Suh dissented and would recommend a five-year suspension.

## DISSENTING OPINION

O'CONNOR, *Member,* August 11, 2006—

## DISCUSSION

The majority of the Disciplinary Board has recommended that respondent be disbarred from the practice of law as a result of his conviction of indecent assault, endangering the welfare of children, and corruption of minors. For the following reasons, I dissent in favor of a suspension for a period of five years.

As set forth in the majority opinion, the facts of this matter are very serious and disturbing requiring a severe sanction. Respondent acknowledges the severity of his criminal conduct, having argued before a three-member panel of the board for a five-year suspension. My consideration of the facts and circumstances persuades me that a five-year suspension sanction is appropriate.

The majority acknowledges this is a disturbing matter on many levels. Respondent had a reputation as an astute and competent lawyer and a dedicated professional with

no history of criminal or disciplinary problems. Respondent's criminal conviction has had his very existence turned upside down. He received 10 years probation and is a registered sex offender pursuant to Megan's Law II. He is prohibited from holding judicial office in the future. He is currently unemployed and has had his debts discharged through bankruptcy. He is seeking public assistance from the Commonwealth and has applied for Social Security disability payments. He has not seen or communicated with his daughter since the date of the incident. Respondent is at an extremely low point in his life, both professionally and personally.

The majority opinion cites cases of inappropriate sexual touching wherein suspensions ranging from 20 months up to five years were imposed on the attorneys who committed such crimes. It also notes that respondent did not express remorse for his actions. Respondent's stated reason for pleading no contest to the charges was to spare his daughter from the anguish of testifying against her father, even though it meant greater harm to respondent himself. Nonetheless, respondent's status as a public figure was a critical factor in the majority's recommendation of the increased sanction of disbarment. Although I am persuaded that respondent's public figure status serves as an aggravating factor, I do not believe that it justifies disbarment. A five-year suspension sufficiently addresses the severity of the underlying misconduct in the light of respondent's status as district attorney and judge-elect. Five years is a long time to be out of the practice of law, and certainly it is long enough to allow respondent to rehabilitate himself to the point where he is fit to practice. By all accounts, including his

own, respondent is not fit to practice at this time. He has taken some steps to help himself, such as abstaining from alcohol and receiving psychological counseling. A five-year suspension still requires respondent to petition for reinstatement and prove his moral qualifications, competency and learning in the law, and to prove he is not a detriment to the public and the integrity of the legal system. These are challenging burdens and will ensure that respondent is a fit and competent individual, should he decide to seek reinstatement in the future. Disbarment merely adds the additional burden of proving that his underlying misconduct is not so egregious as to prohibit him from gaining reinstatement. Based on the prior case law and review of the underlying crimes of other attorneys who have been reinstated from disbarment, it does not appear that respondent would have difficulty meeting this burden, so to disbar him would not achieve any greater measure of security for the public than a five-year suspension would fail to provide.

Board Members Teti, Gephart and Suh join in this dissent.

## ORDER

And now, November 17, 2006, upon consideration of the report and recommendations of the Disciplinary Board and dissenting opinion dated August 11, 2006, the request for oral argument, the petition for review and responses thereto, the request for oral argument is denied, and it is hereby ordered that Mark Peter Pazuhanich be and he is disbarred from the bar of this Commonwealth, retroactive to February 25, 2005.

152

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Eakin dissents and would impose a five-year suspension.